OLIVER AMES *vs.* THOMAS V. McCAMBER.
SAME *vs.* JAMES M. CHACE & another.
SAME *vs.* ROBERT POMEROY.

Bristol. Dec. 31, 1877. — Feb. 28, 1878. COLT & LORD, JJ., absent.

If a contract of sale is written in this Commonwealth, but is executed, delivered and recorded in a foreign state, where the property sold is at the time, and where it is afterwards attached and sold on execution as the property of the seller, the rights of the seller, in an action against the attaching officer or the creditor, are to be settled by the law of that state.

Upon the question of the unwritten or common law of another state, the books of reports of cases adjudged in its courts are admissible in evidence; and the decision of the judge, who tries the case without a jury, as to what that law is, is final, if

the evidence is conflicting, and if it is not contended that the whole evidence will not warrant his conclusion, although the only evidence offered is contained in books of reports of cases adjudged, and the bill of exceptions states the cases put in evidence.

Questions, upon which no ruling was asked or exception taken at the trial, are not open upon a bill of exceptions.

THREE ACTIONS OF TORT for the conversion of horses and other personal property. Answer, in each case, a general denial, and that McCamber, a deputy sheriff of the county of Bennington in the State of Vermont, attached the property in question as the property of A. Haskins & Co., and sold it on executions duly issued on judgments obtained in a court of that state by the other defendants against such firm. The cases were tried together in the Superior Court, before *Brigham*, C. J., who found the following facts:

The defendant McCamber, a deputy sheriff of the county of Bennington, in the State of Vermont, attached the property in question in the town of Stamford, in that county, on February 26, 1875, by virtue of two writs of the County Court of the county of Bennington, issued on February 24, 1875, in two actions brought respectively by Chace and another and by Pomeroy against Albert Haskins and Joel C. Haskins, copartners under the style of A. Haskins & Co., and who were, prior to February 2, 1875, the owners of the property. McCamber caused the property to be sold by auction, by virtue of executions issued upon judgments obtained in said actions, and applied the net proceeds of the sales to satisfy the judgments.

The defendants in the second and third cases were at the time citizens and residents of Massachusetts. Albert Haskins and Joel C. Haskins, in the year 1874, and until February 2, 1875, were copartners under the style of A. Haskins & Co., and owned a saw-mill in Stamford, and there carried on the business of cutting and sawing lumber, owning and using the property in question in such business.

The plaintiff, in 1874 and in 1875, was the owner of timber-lands in North Adams, in this Commonwealth, which extended into the towns of Stamford and Pownal, Vermont, and was engaged in the business of cutting and sawing lumber from such timber-lands, acting by his agent, George B. Perry, who resided in North Adams, and there conducted the plaintiff's business.

On February 2, 1875, Perry, under the authority of the plain-tiff, purchased of A. Haskins & Co. their saw-mill in Stamford, the property in question, and other property, constituting substantially all the real and personal property of A. Haskins & Co., owned and used by them in their business.

The parol agreements and arrangements for the purchase were fully made between Perry and A. Haskins & Co. in North Adams, and there also a deed, conveying the saw-mill, and a bill of sale, conveying the property described in the declarations, were written, but the deed and bill of sale were signed and delivered at the saw-mill in Stamford, and recorded, the deed on February 12, 1875, and the bill of sale on February 9, 1875, in the office of the clerk of the town of Stamford. No consideration passed between the parties to the deed or to the bill of sale, in North Adams or in Stamford, at the time of the making and delivery thereof, but the consideration of the purchase was understood between the parties to be of the value of $2000, being the estimated value of certain lumber which A. Haskins & Co. had previously cut and taken from the plaintiff's timber-lands, without his consent, and advances to be made to A. Haskins & Co. by the plaintiff, and of his undertaking to assume and pay certain ascertained and estimated liabilities of A. Haskins & Co., the advance and liabilities being considered to amount to the sum of $1000. The plaintiff made the advances, and assumed and paid the liabilities ; but whether together they amounted to the full sum of $1000, the judge was not able to find upon the evidence, but found that they approximated to that sum, and that there was an adequate consideration for the deed and bill of sale. The plaintiff took possession of the saw-mill, the deed having been signed and delivered at the mill, and continued in possession thereof, as hereinafter stated.

A pair of horses, included in the sale of A. Haskins & Co. to the plaintiff, was sold subject to a vendor's lien on the part of the person who sold them to A. Haskins & Co., and this vendor's lien was assigned to the plaintiff, and by him paid off, and this pair of horses was attached by McCamber and sold on execution by him, with the other personal property.

After the purchase was consummated, Perry, by authority of the plaintiff, made a contract in writing with Joel C. Haskins,

which was agreed upon in North Adams, and there written, but signed in Stamford, by which it was agreed that Joel C. Haskins should take possession of the mill and cut and saw lumber upon and from the plaintiff's timber-lands, using the saw-mill and the property, described in the bill of sale, for that purpose, Joel C. Haskins furnishing subsistence for the horses so used, and paying the wages of the men employed in the cutting and sawing, and receiving in compensation therefor a certain price for all lumber cut and sawed by him ; and, if there was a profit to the plaintiff, over and above all expenses, Joel C. Haskins was to receive a certain proportion of such profit.

By the contract, the plaintiff assumed the responsibility of the wages of all men employed by Joel C. Haskins in the cutting and sawing, and was to charge to Joel C. Haskins all sums of money paid for such wages, as well as all sums of money advanced by the plaintiff for the subsistence of the horses, Perry being consulted by Joel C. Haskins as to the men employed and their rate of wages. The contract was, immediately after its execution, carried into effect in all particulars, and Joel C. Haskins was in possession of the mill and using the horses in pursuance of the contract, when the same were attached by Mc-Camber. Albert Haskins, who resided in North Adams before and after the sale, was not a party to the contract of Joel C. Haskins with the plaintiff, had no interest therein, and did not act in any particular in carrying it into effect.

The sale of the saw-mill and of the property by A. Haskins & Co. to the plaintiff, and the contract of Joel C. Haskins with the plaintiff, immediately after such sale and contract were made, became known to the men previously employed by A. Haskins & Co. in the saw-mill, and afterwards so employed by Joel C. Haskins under his contract with the plaintiff ; and such sale and contract were matters of notoriety in Stamford, and were known to the defendants in the first and second cases, and to the defendant's attorney in the third case. The defendant in the first case, at the time of and immediately prior to the attachments, was notified by Perry, on behalf of the plaintiff, that the plaintiff claimed ownership of the property by purchase from A. Haskins & Co. ; and, on the sale of the property to satisfy the executions, Perry, on behalf of the plaintiff, proclaimed to the

persons assembled that the property was then, and at the time of its attachment, the property of the plaintiff, and protested against its sale as the property of A. Haskins & Co., or to satisfy executions against their property. ·

A. Haskins & Co., before and at the time the deed and bill of sale were made and delivered to Perry, and when the property to which they related was taken possession of by him, were not able to pay their debts as they became due; nor were they possessed of sufficient property to pay such debts, after such deed and bill of sale were made; but, of this condition of A. Haskins & Co., neither the plaintiff nor Perry had any knowledge or reasonable cause of belief.

The property, during the negotiations for its purchase, and when its purchase was consummated, by the making and delivery of the bill of sale, was all of it in Stamford, and there remained, passing with the saw-mill immediately into the possession and use of Joel C. Haskins, under his contract with the plaintiff, and so remained until attached

Upon these facts, the defendants contended that the sale by A. Haskins & Co. to the plaintiff and the contract of Joel C. Haskins with the plaintiff were made in the State of Vermont, and were controlled by the common law of that state; that by that law a sale of property, although *bonâ fide*, was void, as against creditors of the vendor, unless upon such sale the property sold passed into the substantial and visible possession of the vendee, and such possession was open, notorious and exclusive; and that, when property sold continued in the obvious possession of the vendor, notwithstanding its sale *bonâ fide* by him, it could be lawfully attached as his property by his creditors.

To prove the common law of Vermont, the defendants offered, and the judge admitted, in evidence, against the plaintiff's objection and exception, the books of reports of certain cases adjudged in the courts of the State of Vermont, as follows : *Durkee* v. *Mahoney*, 1 Aik. 116. *Boardman* v. *Keeler*, 1 Aik. 158. *Mott* v. *McNiel*, 1 Aik. 162. *Weeks* v. *Wead*, 2 Aik. 64. *Batchelder* v. *Carter*, 2 Vt. 168. *Moore* v. *Kelley*, 5 Vt. 34. *Fuller* v. *Sears*, 5 Vt. 527. *Stiles* v. *Shumway*, 16 Vt. 435. *Mills* v. *Warner*, 19 Vt. 609. *Flanagan* v. *Wood*, 33 Vt. 332.

The plaintiff thereupon, not waiving his objection and ex ception to such evidence, offered in evidence, and the judge admitted, the books of reports of certain cases adjudged in the courts of the State of Vermont, as follows : *Allen* v. *Edgerton*, 3 Vt. 442. *Wilson* v. *Hooper*, 12 Vt. 653. *Sanborn* v. *Kittredge*, 20 Vt. 632. *Flanagan* v. *Wood*, 33 Vt. 332. *Stanley* v. *Robbins*, 36 Vt. 422. *Daniels* v. *Nelson*, 41 Vt. 161. *Rothchild* v. *Rowe*, 44 Vt. 389.

The judge found that the sale of the saw-mill and of the property in question by A. Haskins & Co. to the plaintiff and the contract of Joel C. Haskins with the plaintiff were *bonâ fide* and not fraudulent in fact ; that the common law of the State of Vermont was as contended by the defendants ; and that the plaintiff's possession of the property described in the declarations was not, upon its sale to him by A. Haskins & Co., substantial, visible, open, notorious and exclusive ; and ruled, upon the facts found, that such sale and contract were made in the State of Vermont, and were controlled by the common law of that state ; that the sale of the property by A. Haskins & Co. to the plaintiff was *ipso facto* void, as to persons who, at the time of such sale, were creditors of A. Haskins & Co. ; that the plaintiff's several actions could not be maintained ; and ordered judgment for the defendants. The plaintiff alleged exceptions.

*G. Marston & A. Potter*, for the plaintiff.

*A. Preston & F. P. Brown*, for the defendants.

ENDICOTT, J.  1. The contract, under which the plaintiff claimed to be owner of the property, described in his declarations, was executed, delivered and recorded in Vermont. The property was in that state at the time and afterward. Having been attached there by the defendants, the rights of the parties are to be settled by the law of Vermont.

2. We are not called upon to determine whether it was competent for the defendants to prove the law of Vermont under their answers ; no such question having been raised at the trial, or ruled upon by the presiding judge. The only exception of the plaintiff, on this part of the case, was to the admission of the reports of cases decided in Vermont, which were offered by the defendants for the purpose of proving the law of Vermont upon the matter in controversy.

3. The books of reports of cases adjudged in the courts of any other state of the United States are competent evidence of the law of that state. Gen. Sts. *c.* 131, § 64. *Penobscot & Kennebec Railroad* v. *Bartlett*, 12 Gray, 244. *Cragin* v. *Lamkin*, 7 Allen, 395.

4 The plaintiff, not waiving his objection to this evidence, also offered the reports of other cases decided in Vermont, for the purpose of showing that the law in that state was not as the defendants contended; and in his argument contends that the decision of the presiding judge on the evidence before him was erroneous. When the law of another state is in dispute, it is to be determined as a question of fact by the court or jury trying the cause. *Hazelton* v. *Valentine*, 113 Mass. 472, 478, and cases cited. If the evidence was conflicting, as the plaintiff con .ds, we have no authority to revise the finding, although the judge has reported the evidence. *Sheffield* v. *Otis*, 107 Mass. 282. No exception can be taken to the finding of a judge upon a question of fact; it is conclusive as if determined by a verdict. *Holman* v. *King*, 7 Met. 384. *Backus* v. *Chapman*, 111 Mass. 386. See also *Sweetland* v. *Stetson*, 115 Mass. 49; *Hoar* v. *Goulding*, 116 Mass. 132; *Nichols* v. *Bucknam*, 117 Mass. 488.

5. The plaintiff did not at the trial raise the question, that, as matter of law, the evidence would not justify a judge or a jury in finding the law of Vermont to be in favor of the defendants. It is too late for him now to do so, the case having been submitted, without objection, to the judge upon all the evidence. If the plaintiff had intended to raise it, he should have done so before the case was submitted. The judge would then have ruled upon it as matter of law, to which an exception could have been taken ; but no such exception is before us.

6. It does not appear that the plaintiff at the trial asked any ruling, or that the judge ruled in regard to the ownership of the pair of horses, which the plaintiff now contends were his property under a lien, acquired from the person who had sold them to A. Haskins & Co.; and we have not considered his argument on that subject.                     *Exceptions overruled.*