JOSEPH B. MOORS & another vs. BENJAMIN GODDARD
& trustees.

Suffolk.    March 14, 1888. — June 21, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Trustee Process — Adverse Claimant — Deposit in Bank — Practice.*

If the depositor of a draft in a bank for collection has no right, either by contract
or usage, before its collection, to draw a check against the proceeds thereof, he
is not chargeable as the trustee of a creditor.

TRUSTEE PROCESS. Richard Stone and another, summoned
as trustees, appeared and filed an answer, and fully replied to
interrogatories filed by the plaintiffs. A claimant of the funds
in the hands of the trustees also appeared. Trial in the Supe-
rior Court, without a jury, before *Mason*, J., who ordered the
trustees to be discharged, and allowed a bill of exceptions, in
substance as follows.

On September 23, 1886, at about eleven o'clock A. M., Mr.
Stone received by mail from Washington a United States Treas-
ury draft payable to the order of the principal defendant, which
was indorsed by him by writing his name across the back
thereof, and by him was delivered to Mr. Stone, pursuant to a
written assignment to the trustees, in trust for the claimant.
The validity of this assignment the plaintiffs denied, and it in-
volved questions of law and fact not passed upon by the court.
Mr. Stone immediately thereafter deposited the draft, without
change or additional indorsement, in the Lincoln National Bank,
where he then had a balance to his credit, and the amount of
the draft was credited upon his deposit-book and upon the books
of the bank in his account. The deposit was made in the usual
course of dealing between the bank and Mr. Stone, and nothing
was said by him or by the officers of the bank in regard to draw-
ing against such credit. The bank, on the same day, at the close
of business hours, sent the draft to its correspondent bank in
New York, with other checks and drafts drawn on places west
of Boston, charging the same to the correspondent bank at the
time when sent, and receiving credit from the correspondent

bank as soon as received by it in New York. The Lincoln National Bank had not otherwise heard from the draft since, and had no actual knowledge whether it had ever been presented for payment or not, and no debit entry against the credit had ever been made. At about twelve o'clock, on the same day, the plaintiffs' writ was served upon the trustees, at which time the draft was still in the actual possession of the Lincoln National Bank.

There was evidence tending to show that, by the custom of banks in Boston, checks and drafts received for deposit were credited conditionally, subject to correction on non-payment; that such deposits were not subject to check of depositors until the check or draft deposited was collected, or sufficient time had elapsed for notice of non-payment in due course of business; that in some instances a notice that checks and drafts deposited were so received, and that in their collection the bank acted as agent for the depositor, was printed upon the deposit-book; that the Lincoln National Bank now print the following notice, " Checks received upon deposit are credited subject to payment," upon deposit-books, but did not upon those in use at the time of the deposit in question; that the practice of the Lincoln National Bank, at the time of such deposit, was the same as at the present time, and in accordance with the custom of banks in Boston; that such deposits were entered both on the customer's deposit-book and in the customer's account on the books of the bank, in the same manner as deposits of bank bills were entered, and no change was afterward made in the entries thus made, but in case of non-payment of a check or draft deposited, the amount of the same was entered upon the other side of the account; that banks did, in certain cases, pay checks drawn immediately against deposits of checks or drafts, and that, when they did so, the responsibility of the customer, the responsibility of the drawer and drawee of the check or draft deposited, the bank's knowledge of the genuineness of the paper deposited, and its liability to technical difficulties not apparent upon ordinary inspection, were elements affecting their decision, drafts upon the United States Treasury being subject to peculiar difficulties by reason of the exacting rules of the Treasury Department; that Mr. Stone was of such

financial responsibility that the bank, in its discretion, having reference to this and other elements referred to, would have paid his checks drawn against said draft at any time after said deposit.

There was also evidence of the course of business of banks, with reference to checks and drafts deposited by customers, of the transmission to correspondent banks and final presentation for payment, with the character of credits given in the successive transactions relating thereto, and the control of such checks and drafts at the several stages of transmission for payment, tending to show that the credits given to customers for such deposits were absolute, and not conditional, and subject to immediate control of the customer by check against the same.

The plaintiffs requested the judge to rule: " 1. That if, after the deposit by Mr. Stone of the draft in question, and before service of the plaintiffs' writ, said Stone could have received payment of a check drawn on said bank, had such been drawn and presented, for the amount of said draft, then the trustees are to be charged. 2. That if the cashier of the Lincoln National Bank would have paid a draft drawn by said Stone against said deposit of said draft, and presented before the service of this writ, then these trustees are to be charged. 3. That if such a draft would have been paid by said bank before said trustee writ was served, then said trustees are to be charged."

The judge ruled that, except as affected by the alleged assignment, upon the validity of which he did not pass, if Mr. Stone could have drawn against said deposit as of right, or if the bank or cashier would have paid his check against the deposit, pursuant to any agreement implied by the course of dealing between the parties, or pursuant to any contract obligation, then he was to be charged as trustee ; but refused to rule that he was to be charged as trustee if he would have been permitted to draw in the discretion of the bank, and the bank would have paid in its discretion, relying on his responsibility, the character of the paper deposited, or both or all the elements which might affect its discretion when not under obligation to pay.

The judge found as a fact, that at the time of service Mr. Stone had not control of the credit entered upon his deposit-book on account of the draft in question, and could not check or draw

upon it as of right, but did not pass upon the question whether the bank would have paid a draft by him against the deposit; and the plaintiffs alleged exceptions.

*W. W. Vaughan,* for the plaintiffs.

*R. R. Bishop & G. Wigglesworth,* for the claimant.

No counsel appeared for the trustees.

DEVENS, J.   While the question raised by the bill of exceptions, namely, whether the trustees are to be held has been argued before us and before the Superior Court between the plaintiffs and the claimant, it is really one between the plaintiffs and the trustees.   A claimant is only concerned when it is ascertained that there are funds in the hands of the trustee originally belonging to the defendant, which, but for the assignment or other title which the plaintiff may have acquired, would be payable to him.   An adverse claimant does not come into court for the purpose of showing that there are no goods, effects, and credits of the defendant in the hands of the alleged trustee, which would, ordinarily, be to prove himself out of court, but for the purpose of showing himself entitled to those funds to which, but for his claim, the plaintiff would be entitled.   He can have no judgment in his own favor, except in the matter of costs, against either plaintiff, defendant, or trustee.   *Gifford* v. *Rockett,* 119 Mass. 71.   *Clark* v. *Gardner,* 123 Mass. 358.   It has, therefore, been held, that a statement of facts signed by the plaintiff and claimant only, and not on behalf of the trustees, who are necessary parties to the judgment, must be discharged.   *Massachusetts National Bank* v. *Bullock,* 120 Mass. 86.   *Gifford* v. *Rockett, ubi supra.*   The first question in such case is, therefore, as between the plaintiff and the alleged trustee, whether the latter is primarily chargeable; and the second, whether the amount for which he is chargeable has been assigned or is due to any other party, who is entitled to present his claim therefor.   In practice these questions undoubtedly are often tried at the same time, if not absolutely together, but they are essentially distinct.

In the case at bar, the only question passed upon by the court was whether the trustees were chargeable, and this in a controversy between the plaintiffs and the claimant.   The presiding judge deemed that this was sufficient for the purpose of the case as presented to him, and held it to be unnecessary to consider

the validity of the assignment for the claimant. The trustees had answered fully, and had no wish, apparently, to be heard, but were prepared to submit the case upon their general answer and replies to the interrogatories addressed to them. As the trustees were discharged, if it shall appear, notwithstanding any irregularity of the trial, that the plaintiffs, who are the excepting party, were not entitled, as between themselves and either of the other parties, to any of the rulings requested by them, no injustice will have been done. It might be said, parenthetically, that it would seem that the questions, upon the one hand, whether the trustees were not entitled to be discharged upon their whole answer, and upon the other, whether the trustees were not chargeable by reason of the fact that Mr. Stone deposited in the bank the draft belonging to the principal defendant as his own, might fairly have arisen at the hearing. But the bill of exceptions is not so framed as to present them, nor could we assume that it contains all the facts necessary to be stated if they were open for discussion. The questions presented by the bill of exceptions only are before us, and no other part of the case is brought here for revision. This has been often decided, and the reasons for such a decision are so obvious, that they do not require restatement. *Richardson* v. *Curtis*, 2 Gray, 497. *Jones* v. *Sisson*, 6 Gray, 288. *Wall* v. *Provident Institution for Savings*, 3 Allen, 96. *Ames* v. *McCamber*, 124 Mass. 85.

The principal defendant had received a Treasury draft, and had indorsed it to Mr. Stone, to be collected and devoted by him to certain purposes specified in a written agreement with the trustees. It was deposited by Mr. Stone in the Lincoln National Bank in Boston, and he was credited with the amount of it in his pass-book. While this draft was yet in the bank and unpaid, the plaintiffs' writ was served on the alleged trustees. The validity of an attachment by trustee process must be determined by the state of facts existing at this time.

The rulings requested by the plaintiffs vary in form, but they were, in substance, that if, after the deposit of the draft by Mr. Stone, he could or would have received payment for the amount of it by a check drawn upon the bank for the amount of it, the trustees should be charged. The plaintiffs did not claim to hold the trustees as such on account of their having

received and deposited the draft to their own credit, or because they had a draft belonging to the plaintiffs for which, when collected, they were to account. It has often been held that choses in action, as notes, drafts, checks, etc., uncollected, which have been deposited with another to be thereafter collected, do not render him liable to be charged under the trustee process. *Lupton* v. *Cutter*, 8 Pick. 298. *Lane* v. *Felt*, 7 Gray, 491. *Hancock* v. *Colyer*, 99 Mass. 187. The position of the plaintiffs was and is, that the property in the draft had passed to the bank, that Mr. Stone was a creditor to the amount of it to the bank, and that if in fact he could have collected the money for it whenever he called for it, it is immaterial whether he could have enforced a payment for it from the bank. In reply to the plaintiffs' requests, the court ruled that, except as to the alleged assignment for the claimant, on the validity of which it did not pass, "if Mr. Stone could have drawn against said deposit as of right, or if the bank or cashier would have paid his check against the deposit pursuant to any agreement implied by the course of dealing between the parties, or pursuant to any contract obligation, then he was to be charged as trustee; but refused to rule that he was to be charged as trustee if he would have been permitted to draw in the discretion of the bank, and the bank would have paid in its discretion, relying on his responsibility, the character of the paper deposited, or both or all the elements which might affect its discretion when not under obligation to pay." The court further found as a fact, "that at the time of service Mr. Stone had not control of the credit entered upon his deposit-book on account of the draft in question, and could not check or draw upon it as of right," but did not pass upon the question whether the bank would have paid a draft by said Stone against said deposit. It further ordered the trustees to be discharged.

This finding of facts was fully justified by the evidence, tending to show that, by the custom of the banks in Boston, checks and drafts were credited conditionally, subject to correction on non-payment; that such deposits were not subject to check of depositors until the check or draft was collected, or sufficient time had elapsed for notice of non-payment in the course of business; that banks did, in certain cases, pay checks drawn

immediately against deposits of checks or drafts, and that when they did so the responsibility of the customer, the responsibility of the drawer and drawee of the check, or character of the draft deposited, and various other elements, affected their decision. There was also evidence from other sources, that credit for the deposit of checks or drafts was absolute, and not conditional. So far as there was a conflict of evidence on this subject, it was a matter for the final decision of the presiding judge. With the usage of the bank with which Mr. Stone dealt, as it is found by the judge to have existed, he must be held to have been acquainted. The circumstance, that, by engaging his personal responsibility, Mr. Stone could have obtained the money for the draft, did not make him liable for the amount of it to the principal defendant, whose property it was when confided to him. Until the bank was under a legal obligation to pay him, there was no pecuniary legal obligation on his part to the principal defendant. No person is to be "adjudged a trustee by reason of any money or other thing due from him to the defendant, unless it is at the time of service of the writ on him due absolutely and without depending on any contingency." Pub. Sts. c. 183, § 34, cl. 4.

It is suggested that a deposit of the draft, for which credit was given by an entry on the books of the bank in the same manner as deposits of bank bills, must be held to have vacated the relation of debtor and creditor between the bank and trustee. If so, the trustee would certainly have had at once a right of action for the amount of the draft, which by the usage of the banks in regard to such deposits it is found he did not. The entry made, whether called a memorandum or by any other name, must be construed with reference to this usage, and did not make the bank liable to the depositor of the draft at all events. The plaintiff urges that the case of *Hancock* v. *Colyer*, 103 Mass. 396, is practically decisive in his favor. We do not so consider it. In that case the trustees had collected the amount of the check in money, had deposited it subject to their own order in the bank, and it was liable to be immediately drawn out by them, as of right, when the trustee process was served. They could not have taken more complete possession of the money.

*Exceptions overruled.*