GEORGE H. BURT & others *vs.* MUNICIPAL COUNCIL OF THE CITY OF TAUNTON & others.

Bristol.   February 4, 1931. — June 1, 1931.

Present: RUGG, C.J., PIERCE, SANDERSON, & FIELD, JJ.

*Municipal Corporations*, By-law, ordinance or order, Appropriation, Contract. *Equity Jurisdiction*, Suit by taxable inhabitants of municipality. *Contract*, Validity.

A municipal council in May adopted an order, subsequently approved by the mayor, authorizing the committee on the fire department to purchase a fire engine at a cost not to exceed a certain sum, "which cost shall be charged to any unexpended balances in the City Treasurer's hands until other provision shall be made therefor." The annual budget for that year did not make provision for the engine. On the date of the order, all funds in the hands of the treasurer were appropriated to specific uses, and there did not appear to be unappropriated balances available to pay for the engine although the city treasurer had enough money to pay for it out of the budget for the fire department. A standing order of the municipal council required committees, in making purchases of the amount in question, to call for bids by an advertisement "setting forth the specifications," all contracts to be awarded to the "lowest responsible bidder." The committee on the fire department published an advertisement which did not set forth the specifications of the fire engine but merely stated that they could be had at a certain place. The specifications furnished to bidders were in outline showing only in a general way what was required, each bidder being required to provide complete specifications in detail. The municipal council attempted to authorize the committee to award the contract to a bidder other than the "lowest responsible bidder" in contravention of the standing order. Thereafter, in June, a suit in equity by ten taxpayers under G. L. c. 40, § 53, was commenced to enjoin the proposed purchase. In July, the standing order was amended so as to permit the council to authorize the awarding of contracts to others than the lowest responsible

bidder.   In August a supplementary budget was adopted containing an appropriation specifically for the engine.   Thereafter, after hearing of the suit, a final decree was entered directing the defendants to award the contract for the engine to the lowest responsible bidder. On appeal by the defendants, it was *held*, that

(1) The order in May authorizing the purchase of the fire engine did not contain a valid appropriation in accordance with G. L. c. 44: it was not an order for an appropriation "prior to the adoption of the annual budget" under § 32, nor did it fall within the terms of § 34, nor was it adopted in accordance with the procedure specified by § 33;

(2) Furthermore, there being at that time no unappropriated balances available for such purchase, the attempted appropriation was invalid even though the treasurer had enough money to pay it out of the budget for the fire department;

(3) The item in the supplementary budget adopted in August did not relate to nor cure the invalidity of the attempted appropriation in May; and, not having been adopted until after the commencement of the suit, it could not be considered;

(4) The committee's advertisement for bids did not conform to the standing order of the municipal council with respect to specifications, and was invalid;

(5) There was no valid basis on which a contract for purchase of the engine could be awarded; and the final decree was ordered reversed, and a decree ordered to be entered enjoining the defendants from awarding a contract under the bids received.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Bristol on June 18, 1929, and afterwards amended, under G. L. c. 40, § 53.

The defendants demurred.   Their demurrers were heard by *Carroll*, J., and were overruled.   The suit previously was before this court upon a report of the order overruling the demurrers; and, in a decision reported in 272 Mass. 130, that order was affirmed.   The suit thereafter was referred to a master.   Material findings by him are stated in the opinion.   By order of *Crosby*, J., there were entered an interlocutory decree confirming the master's report and the final decree described in the opinion.   Some of the defendants appealed from both decrees.

*M. M. Horblit*, (*W. A. Swift*, *W. G. Powers*, & *L. H. Coughlin*, with him,) for the defendants.

*R. J. Regan*, for the plaintiffs.

RUGG, C. J.   This is a bill in equity under G. L. c. 40, § 53, by more than ten taxpayers of the city of Taunton against

the city of Taunton, the members of its municipal council, the chief engineer of its fire department and its city treasurer. The main object of the bill is to restrain the proposed purchase of a pumping engine for the fire department of the defendant city. The case was before us in 272 Mass. 130, on a demurrer, where the allegations of the bill are set forth and an order overruling the demurrer was affirmed. Answers were filed raising numerous issues. The cause was then referred to a master by rule in the usual form. After the filing of his report an interlocutory decree was entered overruling exceptions to and confirming the master's report. An appeal by the defendants from this decree was not relied on before this court and therefore must be treated as waived. A final decree was entered (1) enjoining the defendants from entering into any contract for the purchase of fire apparatus with one other than the lowest responsible bidder and (2) ordering the defendants forthwith to award the contract for the purchase of fire apparatus to the lowest responsible bidder. An appeal was taken from that decree by some of the defendants.

The findings of the master, so far as material to the grounds of this decision, are in substance that, on February 5, 1929, the municipal council of the city of Taunton adopted an order forbidding committees to make purchases in an amount exceeding $500 "without first calling for sealed bids by advertisement, published in the Taunton Daily Gazette, setting forth the specifications and the time and place where and when such bids will be received. . . . Only bids so received shall be considered. All contracts shall be awarded to the lowest responsible bidder." That order was held to be valid and binding by the earlier decision. On May 7, 1929, an order was adopted by the municipal council and on May 9, 1929, approved by the mayor authorizing and directing the committee on fire department to purchase a thousand gallon pumping engine at a cost not to exceed $13,500, "which cost shall be charged to any unexpended balances in the City Treasurer's hands until other provision shall be made therefor." An advertisement was published on May 25 and May 27, 1929, inviting bids for furnishing

a motor driven pumping engine. As a consequence six bids were received, two for a piston pump, three for a rotary pump, and one for a centrifugal pump. Because of the desire of the chief engineer of the fire department to purchase for the city the make and type of pump for which the bid was highest and being unable to do so because of the order of February 5, 1929, already described, the committee reported their doings to the municipal council. That body voted on June 11, 1929, that the committee "be empowered to award the contract for a fire pump to the bidder whose pump they feel best fitted for their need." On June 18, 1929, the present bill was filed. On July 1, 1930, by our earlier decision on the demurrer, this vote of June 11, 1929, was held to be invalid, because contrary to the binding limitations established by the order of February 5, 1929. No facts set out in the report of the master shake the force of that decision with respect to the situation at the time this bill was filed. On July 30, 1929, almost a year before the earlier decision, the order of February 5, 1929, was amended so that the requirement that all contracts be awarded to the lowest bidder was changed to read as follows:

"All contracts shall be awarded to the lowest responsible bidder, excepting when, in the opinion of the committee the awarding of the contract to the lowest bidder is not advisable, the committee may appeal to the Council, who may, by majority vote grant the committee the power to award the contract as they deem proper."

The master found, with respect to the order of May 7, 1929, purporting to authorize the purchase of the pumping engine and the charge of its cost to any unexpended balance in the city treasury, that its phraseology was the same as that commonly used by the municipal council:

"The phraseology used in the order of the municipal council of May 7, 1929, is the same as that commonly used by said council whenever an order was passed for the expenditure of money, and it is the custom in said city if the sum to be expended for a specific purpose is not cared for in the original budget as submitted to said council by

the mayor, the specific items are usually taken care of in a supplementary budget. In the instant case, when the council authorized the expenditure of a sum not to exceed thirteen thousand five hundred (13,500) dollars for the purchase of a fire pump on May 7, 1929, that item was not cared for in the original budget, as submitted by the mayor early in the year of 1929, but in the supplementary budget of August 20, 1929, under the heading of 'Protection of Persons and Property' appears the following item: 'New Pump — Fire Department, $13,500.'"

The original budget of 1929 contained a clause to the effect that no portion of any amount therein specified should be devoted to any other purpose except by vote of the municipal council. The original budget contained no item for the pumping engine in question.

The order of May 7, 1929, already set forth in substance, was not in conformity to the terms of the governing statute. Plainly it was not an order for an appropriation "prior to the adoption of the annual budget" and hence was not authorized by G. L. c. 44, § 32. It does not fall within the terms of G. L. c. 44, § 34, which empowers certain executive officers of a city in the period after the expiration of any fiscal year and before the regular appropriations have been made to make certain expenditures in anticipation of appropriations. It was not adopted in accordance with G. L. c. 44, § 33. The procedure there marked out is that the municipal council might, if it deemed an appropriation for a pumping engine necessary, by vote request the mayor to transmit a recommendation for such appropriation and, in case of his failure to comply with such request, might after seven days make appropriation by vote of two thirds of its members. For the municipal council to make the appropriation and send it to the mayor for approval is a procedure different in kind and in substance from the procedure prescribed by § 33, where the recommendation for the appropriation must come from the mayor after request to that end by vote of the council or must be made by a vote of two thirds of the members of the council.

Further findings of the master with respect to the order

of May 7, 1929, are that on "May 7, 9, 25, June 11 and 18, 1929, there was more than enough money in the hands of the city treasurer to pay for the fire pump, as was ordered by the municipal council, and out of the appropriation in the original budget for the fire department, there was more than enough unspent money than would pay for said fire pump. If on or about May 9, the amount necessary to pay for the pump was charged against the appropriation made in the original budget for the fire department or any other city department, it would have reduced said appropriation to a point where said department would have insufficient funds to pay wages, and meet current expenses for the financial year of 1929, unless in the supplementary budget said item was taken care of; that a supplementary budget was passed on August 20, 1929, making available said sum of money." These findings do not go to the extent of showing a valid appropriation on the date when the present bill was filed. There is no finding that on the dates mentioned there were unappropriated balances available. All the moneys in the hands of the city treasurer appear to have been already appropriated to specific uses. Presumably this was all done by the annual budget. As has been held repeatedly, the design of the budget law for cities was to set rigid barriers against expenditures in excess of appropriations, to cultivate municipal thrift, to prevent the borrowing of money for current expenses and in general to put cities upon a sound financial basis so far as those ends can be achieved by legislation. *Flood* v. *Hodges,* 231 Mass. 252–256. *Decatur* v. *Auditor of Peabody,* 251 Mass. 82, 86. *Parkhurst* v. *Revere,* 263 Mass. 364. It would strongly tend to frustrate this design if the juggling with appropriations already made, such as is thus disclosed, were upheld. There is nothing at variance but on the contrary everything in harmony with this conclusion in *Leonard* v. *School Committee of Springfield,* 241 Mass. 325, 330 and 332.

The supplementary budget of August 20, 1929, making available the requisite funds for the purchase of the pumping engine, was passed a little over two months after the filing of the present bill. Without discussing other as-

pects of that supplementary budget, all that need be said is that it cannot be the basis of the affirmative mandatory relief granted by the second paragraph of the final decree ordering the immediate award of the contract for fire apparatus to the lowest bidder.  It does not relate back to and cure the fatal defect in the order of May 7, 1929.  Therefore the relief granted in this particular by the final decree rests upon a cause and events which according to the facts disclosed by the master's report came to pass after the filing of the bill.  If there is no cause for equitable relief when the bill is filed, it cannot be maintained upon a cause accruing thereafter.  *Richardson* v. *Brown*, 255 Mass. 64, 66 and cases cited.  The case at bar is distinguishable from *Twombly* v. *Selectmen of Billerica*, 262 Mass. 214.

Whether so much of the order of the municipal council of May 7, 1929, as authorized the purchase of a pumping engine may stand alone, to become vital and effective if and when due appropriation for the payment of its cost should be made according to the budget provisions of G. L. c. 44, is not before us for decision on this record.  See *Malden and Melrose Gas Light Co.* v. *Chandler*, 220 Mass. 1, 9.

The only authority of the committee on fire department to purchase the pumping engine was the order of the municipal council of May 7, 1929.  Any possible authority conferred by that order was dependent for its due execution upon compliance with the order of February 5, 1929.  By the terms of that earlier order (already set forth so far as pertinent) sealed proposals were required to be called for by "advertisement" in a local daily newspaper "setting forth the specifications."  The master's report shows that the advertisement actually published did not set forth the specifications but on that subject said merely that sealed proposals would be received at a time and place specified for furnishing a motor driven pumping engine "in accordance with the specifications which may be had at the Chief Engineer's office, Central Fire Station . . . .  The right to reject any and all bids is reserved."  The specifications submitted to bidders contained in part the following:

"These specifications are not drawn to cover this appa-

ratus in detail, only to give the bidder an outline of what will be required in a general way. Each bidder must furnish a complete set of specifications in detail as to his apparatus."

Thus the advertisement as published did not print the specifications under which the bids were invited. With respect to the issue as to the effect of this omission from the advertisement the master found:

"It has been the custom in the past, by other heads of departments of the said city, that specifications were referred to in the bids and proposed bidders were usually advised where the detailed specifications may be had. In some departments detailed specifications are printed. In the advertisement of May 25, I find that no bidder was misled by the failure of the chief engineer to cause specifications to be published, and the specifications upon which bids were made did not discriminate against any bidder."

Manifestly this advertisement did not conform to the terms of the order. It did not set forth the specifications, but simply referred to a place where such as existed might be found. Even those specifications were in outline showing only in a general way what was required, each bidder being required to provide complete specifications in detail. The terms of the governing order are not open to doubt as to meaning. They are unequivocal and mandatory. They cannot be overridden, softened or obliterated by custom. They must stand and be enforced in cases brought before the courts. To permit them to be frittered away would thwart their salutary design. As was said when the case was here at its earlier stage respecting that order as a whole: — "It is a provision of substance partaking of the nature of a rule for the conduct of the general business affairs of the city. Its purpose is to protect the financial interests of the city by preventing favoritism in awarding contracts and to put a limitation on the otherwise very broad powers of the city officers to bind the city by contract. Its tendency is to give full publicity to proposed city contracts, to establish genuine and open competition upon the same footing after proper advertisement, and to insure honest methods of letting contracts." 272 Mass. 130, at page 133.

The case at bar on this point is governed also by *Sweezey* v. *Mayor of Malden*, 273 Mass. 536, where the subject is discussed at large.

Other contentions presented in argument need not be considered.

The conclusion is that the proceeding by the defendants as to advertising for bids was a nullity and the bids submitted do not form the basis on which a contract can be awarded.

The facts set forth in the master's report show that the plaintiffs are entitled to a decree perpetually enjoining the defendants from proceeding to award any contract under the bids hitherto received. A decree to this effect may be entered under the prayer for general relief. The final decree is reversed and a decree of the nature stated is to be entered.

*Ordered accordingly.*