Pettingell, J.
Action of contract to recover for work done in ploughing and removing snow in the City of Law *10 rence in the year 1935. With one exception, the vital facts are the same as those that appear in the action of the Continental Construction Company v. City of Lawrence, Mass. Adv. Sh. (1937) 913. The plaintiff there sought to recover for the same kind of work performed following the same severe snow storm, the financial situation of the city government being the same, with no regular appropriation available when the work was done and the subsequent incurring of liabilities for this kind of work in excess of the amounts expended for such purposes during any one month of the preceding year and in excess of the appropriation later appearing in the annual budget.
In this case as in that, the plaintiff’s right to recover is based on a vote of the city council declaring that an “extreme emergency” existed, bringing the case within the exception to be found in G. L. (Ter. Ed.) C. 44, §31.
In the earlier case, the plaintiff depended upon that vote as in itself establishing an “extreme emergency”; the Supreme Judicial Court held that the declaration to that effect of the city council did . not have any presumptive or evidential force in establishing the existence in fact of an “extreme emergency.” In the present case, there was evidence of the physical conditions existing in the city at the time of the vote and a specific finding of fact was made by the trial judge that an “extreme emergency” existed. This finding of fact is the one fundamental difference between the Continental Construction Company action and .the case at bar.
The defendant contends that the finding of fact of the trial judge that there was an “extreme emergency” was not warranted on the evidence, but there is nothing in the report which shows that the defendant is entitled to raise that issue.
*11 It requested sixteen rulings, of which three were given, one was given in part, and twelve were denied. Of those denied, only three, the twelfth, thirteenth and fifteenth, deal with the existence of an “extreme emergency,” and each of these is a request to rule that, upon certain facts stated, it could not he ruled as “matter of law” that an “extreme emergency” existed. Whether or not it did exist was not “matter of law” but a pure question of fact. Merrill v. Lowell, 236 Mass. 463, at 466; Safford v. Lowell, 255 Mass. 220, at 224, 225; Continental Construction Co. v. Lawrence, Mass. Adv. Sh. (1937) 913, at 914, 915. Because of the form of these requests, and the issue they present, their denial was proper, but the defendant is left without standing to attack the trial judge’s finding of fact. Where no appropriate ruling has been requested raising the issue of the sufficiency of the evidence to support a finding of fact, a finding of fact made upon that evidence must stand. It is imperative that the issue of law involved be called to the attention of the trial judge. Draper v. Saxton, 118 Mass. 427, at 431; Ames v. McCamber, 124 Mass. 85, at 91; Commonwealth v. Sinclair, 138 Mass. 492, at 495; Keohane, Petitioner, 179 Mass. 69, at 72, 73; Richards v. Appley, 187 Mass. 521, at 522; Manning v. Anthony, 208 Mass. 399, at 404; Reid v. Doherty, 273 Mass. 388, at 389; Segal v. Allied Mutuals Liability Insurance Co., 285 Mass. 106, at 109; Parker v. Levin, 285 Mass. 125, at 129; Lender v. London, 286 Mass. 45, at 47; Spencer v. Burakiewics, 288 Mass. 83, at 85; Stowell v. H. P. Hood S Sons, Inc., 288 Mass. 555, at 556, 557.
Nor do we think as to this issue that the case is within the rule of such cases as Goldman v. Adlman, Mass. Adv. Sh. (1935) 1949, at 1954, and Leshefsky v. American Employers Ins. Co., Mass. Adv. Sh. (1936) 143, at 144, 145, in which it has been held that where the facts are not open to' *12 dispute or have been agreed upon, and the issues of law and fact have been separated and made distinct, an exception to a general finding raises “the question of law whether it was permissible on the subsidiary facts established.” What is in question here is whether the trial judge was justified in finding one of the “subsidiary” facts upon which the general finding was based. Such a subsidiary finding was involved in Draper v. Saxton, supra, where the delivery of mortgaged property was in issue; in Ames v. McCamber, supra, in which waiver was an issue; in Spencer v. Burakiewics, supra, involving illegality of a contract; in each of these cases it was held that the sufficiency of the evidence to warrant the finding of fact made could not be raised in the appellate tribunal because there had been no request for a ruling definitely raising that issue.
We must deal with the case, therefore, upon the basis of the existence of an “extreme emergency” as fact; the case then comes within the principle of the cases of Goldman v. Adlman, supra, and Leshefsky v. American Employers Ins. Co., supra, because all the subsidiary facts having been found or agreed upon, such a request as that of the defendant numbered 16, “That as a matter of law on all the evidence the plaintiff is not entitled to recover in this action,” operates as a general exception to raise the issue whether on the facts found or agreed upon the finding was permissible. It is not certain that this request can be made the subject of specifications and it is not stated in the report that it was denied because it failed to comply with Rule XXVII of the District Court Rules in that respect; nor has that reason for its denial been argued by the plaintiff. Rule XXVII states that no review “as of right” shall lie to the refusal of such a ruling; this division, however, may consider such a request on its merits, DiLorenzo v. Atlantic National Bank, 278 Mass. 321, at 325. As it is in effect a *13 request to rule that the evidence is insufficient in any form of declaring to justify a finding for the plaintiff; Rubin v. Hahn, 229 Mass. 126, at 129; and as it goes directly to the heart of the ease, we proceed to consider it on its merits.
There are two things which govern and control the defendant in the administration of its municipal business, its charter, St. 1911, C. 621, Part II, and the provisions of G. L. (Ter. Ed.) C. 44, §§30 to 34, inclusive. Where there is a conflict between the city charter and G. L. C. 44, the latter prevails. U. S. Drainage & Irrigation Co. v. Medford, 225 Mass. 467, at 472; Flood v. Hodges, 231 Mass. 252, at 256; but where there is no inconsistency, the provisions of the city charter remain in force.
The order of the city council, upon which the plaintiff relies, was passed before the annual budget had been adopted. There were, at that time, no appropriations available for the administration of the city business. Under the city charter, a department, under normal conditions, has the right to incur liability “to an amount not exceeding one-fifth of the total appropriation made for similar purposes in the preceding year.” The amount thus available for snow removal, at the time the order was passed, was $13,-200. G. L. (Ter. Ed.) C. 44, §34, however, has a broader provision which is controlling in this case. It permits, during the pre-budget period, the incurring of liability, to be charged against the next annual appropriation, not exceeding “in any month the sums spent for similar purposes during any one month of the preceding year.” The limit, fixed in this case by the statute, was $34,336.31. It is to be noted that what is permitted by both city charter and statute in the pre-budget period is the incurring of liabilities. The duty is on the mayor to prepare the budget; Flood v. Hodges, 231 Mass. 252, at 256; Remington Typewriter Co. v. Revere, 285 Mass. 1, at 5; but under G. L. (Ter. Ed.) ,C. 44, §32, the mayor, who is by the city charter a member of *14 the city council and also the director of. finance, has, during the pre-budget period, the right to recommend appropriations and the city council the right to make them. See Burt v. Municipal Council of Taunton, 275 Mass. 535, at 539. G. L. (Ter. Ed.) C. 44, §34, and G. L. (Ter. Ed.) C. 44, §32, taken together, must be construed to mean, that this pre-budget power of recommending and making appropriations is limited as to amount by the provisions of Section 34.
G. L. (Ter. Ed.) C. 44, §31, provides, also, that “in cases of extreme emergency involving the health or safety of persons or property,’-’ the' city council may by a two-thirds vote authorize a department to incur liability in excess of the appropriation made for the use of such department.” The language of this section clearly presupposes the existence of an appropriation prior to the vote of the city council in the case of the “extreme emergency.” Section' 34 of the city charter provides, that “no' expenditure shall be made or liability incurred by or in behalf of the City until the City Council has duly voted an appropriation sufficient to meet such expenditure or liability.” Nothing is to be found in G. L. (Ter. Ed.) C. 44, which is in conflict with this section of the charter; the pertinent provisions of both the statute and the charter thus deal with the incurring of liability on the basis of the existence of a prior appropriation. The city charter specifies it for ordinary business, the statute states it as a part of the “extreme emergency” procedure.
It has been argued that the order of the City Council. was in itself an appropriation. That order is:
“Therefore, be it ordered: That the Director of Engineering be, and hereby is ordered to take all necessary means and expend any amounts of money necessary to expeditiously and thoroughly relieve these conditions.”
*15 The order does not designate any fund which is to be the source of the money expended; it does not specify any amount which limits the Director of Engineering in overcoming the emergency; nor does it set any time within which he is to do the work ordered to be done. It leaves wholly to his discretion the amount and scope of the work, the length of time he is to devote to it, and the amount of money he is to expend in doing it.
An appropriation of a thing is the setting of it “apart for a particular use.” Webster. A financial appropriation is “money set apart by formal action to a specific use.” Webster. As an illustration of the use of the word “appropriation” in this sense, Webster cites from the Constitution of the United States, Article I, Section 9, “No money shall be drawn from the treasury, but in consequence of appropriations made by law. ’ ’ Definiteness of the amount appropriated and definiteness of the use or purpose for which the money is to be used are essential elements of a financial appropriation. “An appropriation must, of course, fix the amount thereof.” McQuillin, Municipal Corporations, 2d Ed., § 2349, Vol. II, p. 988.
In Green v. Everett, 179 Mass. 147, certain land owners petitioned for damages as the result of a taking and later came to an agreement with the city regarding a settlement. The city council by vote accepted the settlement, designating the amount to> be paid, and later enacted the agreement over the mayor’s veto, but neglected and refused to make the appropriation necessary to carry the agreement into effect. The city charter had a provision similar to the one in this case, that no liability could be incurred in behalf of the city unless an appropriation had been voted sufficient to meet the liability. It was held that no appropriation having been made to meet the liability, the city council had *16 no authority to enact the votes in question and that the settlement was not binding .upon the city. See also, Webb Granite &c. Co. v. Worcester, 187 Mass. 385, at 387, 390.
The reasoning that is relied upon in this case to reach the result that the. order passed by the city council is in effect an appropriation, if applied to the facts in the case just cited, would have required a decision that a vote accepting a settlement of a claim against the city in a definite and designated amount was in itself an appropriation of that amount.
So, also, in the case of Costello v. North Easton Village District, 205 Mass. 54, at 58, 59, the District having exhausted its appropriation for the pay of watchmen, a meeting was called at which it was voted to employ the plaintiff “for the ensuing year, salary $600. ” There was no formal appropriation of that amount. Here, also, if weight is to be given to the argument that the order of the city council in the case at bar amounts to an appropriation, the Supreme Judicial Court should have decided that there was a sufficient appropriation. The decision was otherwise and the plaintiff failed in his action because there had been no appropriation for his salary.
A definite amount cannot be appropriated for an unnamed purpose; neither can an indefinite amount be appropriated for a designated purpose. In either-case there is a violation of a fundamental principle which underlies the financial structure of modern government. 'Stability of municipal finance would be impossible if appropriations of indefinite amounts were to be tolerated. To open the treasury doors and to order, a city official to take what he needs is not an appropriation.
By the city charter, the city council was forbidden to incur a liability without voting.“an appropriation sufficient *17 to meet such expenditure.” Its first duty was to attempt to meet the emergency by the power given to it by the city charter, that of appropriation. It had authority at that time to appropriate $34,336.31. It then had the further power, the “extreme emergency” still continuing, to authorize by a two-thirds vote the incurring of liability in excess of the appropriation. If it had followed this procedure, it would have assumed a responsibility which was placed upon it by the charter, and would have been in a position when the question of exceeding the appropriation came up, to pass upon the need of further expenditures, thus exercising a check upon the incurring needlessly of further liabilities. As it was, it abandoned all responsibility, and gave up all power of control, placing the entire matter upon the shoulders of the Director of Engineering, who, by the city charter, has no power of appropriation and a limited authority to incur liability.
The situation is not helped by the argument that the procedure actually adopted is in essence the same as if there had been an appropriation and a subsequent vote to authorize the incurring of liabilities beyond the appropriation, the theory of that argument being that as much money would have been spent in one way as in the other. By following the procedure which the city charter requires, a city council which is acting* for the best interests of the city, keeps more closely in touch with the situation, and has some degree of control over it, two factors which may work for the good of the city by eliminating unnecessary or unnecessarily continued expense.
The purpose of St. 1913, C. 719, now G. L. (Ter. Ed.) C. 44, has been declared to be to set rigid barriers against expenditures in excess of appropriations and to put cities on a sound financial basis. Flood v. Hodges, 231 Mass. 252, at 256; Decatur v. Peabody, 251 Mass. 82, at 86. G. L. (Ter. *18 Ed.) C. 44, §31, which forbids the exceeding of appropriations (except in eases of extreme emergency) has. been construed to mean that a contract made in excess of an appropriation is not binding upon the municipality. Dyer v. Boston, 272 Mass. 265, at 274; McHenry v. City of Lawrence, Mass. Adv. Sh. (1936) 1489, at 1492; Peters v. City of Medford, Mass. Adv. Sh. (1936) 2033, at 2035, 2036. The tendency of all' the decisions in cases arising under G. L. (Ter. Ed.) C. 44, is toward a strict construction of the statute, and a requirement that all its provisions be exactly observed; as otherwise the barriers erected will be entirely ineffectual and the salutary purposes of the statute prevented.
We are of opinion, therefore, that the procedure adopted by the city council was in violation of Section 34 of the city charter and.of G. L. (Ter. Ed.) C. 44, §31, each of which requires an appropriation by the city council before a vote authorizing the incurring of liability “in excess of the appropriation” can be effective.
We are of opinion, also, that the order of the city council was invalid for another. reason; it was too indefinite. The statute permits, in the case of an “extreme emergency,” the incurring “of liability.” The order to the Director of Engineering was that he should “take all necessary means and expend- any amounts of money necessary.” There was no vote authorizing him to incur any particular liability, such as the execution of. a specific contract, or the employment of designated individuals at a daily or hourly rate. The order that was passed, limitless in its nature, is wholly inconsistent with the spirit of the other provisions of G. L. (Ter. Ed.) G. 44, and is so broad and indefinite as to be beyond reason. . The same principle which requires that an appropriation must be definite requires also that an order such as this should have limits and specifications *19 sufficient to enable a judicial tribunal to decide whether or not particular acts are within its scope.
We are further of the opinion that the contracts made by the Director of Engineering in consequence of the order of the city council, including that upon which the plaintiff’s claim is based, are not legally binding upon the city; McHenry v. City of Lawrence, supra; Peters v. City of Medford, supra, and cannot be made the basis of an action against the city.
“A statutory requirement which is frequently found is that no contract shall be made by the municipality unless a previous appropriation shall have been made for the purpose of liquidating the liability created. It is sometimes also required that the comptroller or other officer of the city shall certify upon the contract that the money has been appropriated for the purpose of paying the obligations incurred. These requirements are imposed for the purpose of protecting the treasury of the municipality against the incurring of excessive liabilities or liabilities for which no provision is made. They are mandatory; and if a contract is entered into without a compliance with the statutory requirements it is void, and there can be no recovery thereon.” Dillon, Municipal Corporations, 5th Ed. §790, Vol. II, p. 1177.
This disposes of the plaintiff’s contention that he is entitled to recover because there is a balance remaining of the regular appropriation sufficient to pay his claim.
The plaintiff further contends that under Section 40 of the city charter, the Director of Engineering has “exclusively the powers of . . . surveyors of highways” and that therefore, under G. L. (Ter. Ed.) C. 84, §7, it was his duty “forthwith (to) cause snow to be removed or trodden down so as to make such ways reasonably safe and convenient,” and1 there having been no appropriation for the removal of snow, he had the right under Section 7 “to em *20 ploy persons to .make such repairs who shall be paid by the town.”
'The city charter, however, does not make him a surveyor of highways, it simply invests him with the “powers” of such an officer, and says further that he has such powers “except as herein otherwise provided.” These words are clearly words of limitation. It is difficult to imagine that the Legislature in granting the charter to the city of Lawrence, with its restrictive clauses, limiting the authority of the city officials to expend money and incur liabilities, should also by the same act create one city official with powers inconsistent with the general provisions of the charter which are applicable to all other city officials. The Legislature cannot have intended to have one official who is entirely outside the scope of the charter. .For this reason, we interpret the words “except as herein otherwise provided” as limiting the Director of Engineering in the exercise of the powers of a highway surveyor to a procedure consistent with the general provisions of the charter. In other words, in his exercise of the powers of a highway surveyor, he is just as much governed by the provisions of Section 34 of the city charter, as he' would be if he were acting merely as Director of Engineering. That section stands as a limit upon his authority in whichever capacity he acts. Unless such a construction is adopted the words “except as herein otherwise provided” have m> meaning.
There being prejudicial error in the denial of the sixteenth ruling requested by the defendant, the finding for the plaintiff is to be vacated, and judgment is to be entered for the defendant.