J. WILLIAM FLOOD & others *vs.* LEWIS A. HODGES & another.

Bristol.    October 28, 1918. — November 19, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Municipal Corporations,* Municipal indebtedness act, Budget.    *Statute,* Construction.    *Words,* "Any purpose."

Under the provisions of the municipal indebtedness act which relate to an annual budget of current expenses in cities other than Boston governed by a mayor and a city council, contained in St. 1913, c. 719, § 20, and providing that the city council, "without the approval of the mayor, shall not increase any item in nor the total of a budget, nor add any item thereto," orders and ordinances, adopted by the city council of such a city without the approval of the mayor, purporting to increase the compensation of firemen and policemen beyond the amounts provided for by the budget, are void.

In the provision, contained in the statute named above, that, "In case of the failure of the mayor to transmit in writing to the city council a recommendation for an appropriation of money for any purpose deemed by the council to be necessary, and after having been so requested by vote of the city council, said council, after the expiration of seven days after such vote, upon its own initiative, may make an appropriation for such purpose by a vote of at least two thirds of its members," the words "any purpose" mean any purpose other than those already included in the annual and supplementary budgets submitted by the mayor.

The unequivocal limitation placed by the statute upon the power of initiative by the city council of such a city in making appropriations is not to be defeated by a vote requesting action by the mayor or by an amendment to ordinances establishing such expenditures or by the enactment of an ordi-

nance attempting to deprive the mayor of his prerogative under such a city charter of approving drafts or warrants before money can be withdrawn from the city treasury.

BILL IN EQUITY, filed in the Supreme Judicial Court on September 4, 1918, by the mayor and more than ten taxable inhabitants of the city of Taunton under R. L. c. 25, § 100, to restrain the city auditor from approving and the city treasurer from paying to employees of the fire department and of the police department an increased compensation which purported to be authorized by certain orders and ordinances of that city passed by the city council without the approval of the mayor and alleged to be void.

The case was heard by *Carroll,* J. The facts that appeared in evidence are stated in the opinion. The single justice ruled that the order of the city council purporting to make an appropriation for payment of extra compensation to members of the police and fire departments, which was passed on July 16, 1918, as described in the bill, was unlawful and void.

He found that, although the other appropriations which had been made lawfully for the police and fire departments of the city of Taunton had not been entirely spent at the dates when the city council passed the order and ordinances described in the bill, by which they attempted to increase the compensation of policemen and permanent firemen, such appropriations were sufficient only for the payment of the wages of such employees at the rates which were in force before such orders and ordinances were passed, and were not sufficient to pay any of the increases therein contained, and he ruled that the city council had no authority to make the increases in compensation of policemen and permanent firemen which they attempted to make by the order passed on May 14, 1918, described in the bill and by the ordinances passed on July 23, 1918, also described in the bill.

He also found that certain other ordinances described in the bill were unreasonable in so far as they required payment of the moneys of the city of Taunton by the treasurer on warrants not signed by the mayor, and ruled that the amendments to the ordinances of the city of Taunton described in that part of the bill were void.

The single justice ordered permanent injunctions to issue as prayed for in the bill, and reported the case for determination by the full court.

The provisions relating to an annual budget of current expenses in cities other than Boston governed by a mayor and a city council, contained in § 20 of St. 1913, c. 719, called the municipal indebtedness act, are as follows:

"Section 20. Within sixty days after the annual organization of the city government, the mayor of every city, except Boston and those cities having the commission form of government, so called, shall submit to the city council the annual budget of the current expenses of the city, and the mayor may submit thereafter supplementary budgets until such time as the tax rate for the year shall be fixed. The budget shall consist of an itemized and detailed statement of the money required, and the city council shall make such appropriations in detail, clearly specifying the amount to be expended for each particular purpose. The city council may reduce or reject any item, but, without the approval of the mayor, shall not increase any item in nor the total of a budget, nor add any item thereto. It shall be the duty of the city officials, when so requested by the mayor, to submit to him forthwith in such detail as he may require estimates for the next fiscal year of the expenditures of their departments or offices under their charge, which estimate shall be transmitted to the city council. In case of the failure of the mayor to transmit in writing to the city council a recommendation for an appropriation of money for any purpose deemed by the council to be necessary, and after having been so requested by vote of the city council, said council, after the expiration of seven days after such vote, upon its own initiative, may make an appropriation for such purpose by a vote of at least two thirds of its members, and shall in all cases make such appropriations in detail, clearly specifying the amount to be expended for each particular purpose; . . . In the period after the expiration of any fiscal year and before the regular appropriations have been made by the city council, liabilities may be incurred and expenditures made payable out of the regular appropriations to an amount not exceeding in any month sums spent for similar purposes during any one month of the preceding year, or may expend in any one month for any

officer or board created by law an amount not exceeding one twelfth of the estimated cost for that year, but all interest and debt falling due in said period shall be paid."

*H. LeB. Sampson,* for the plaintiffs.

*A. Fuller, (R. P. Coughlin & W. A. Swift* with him,) for the defendants.

RUGG, C. J.   This is a bill in equity brought by the mayor and more than ten taxable inhabitants of the city of Taunton to restrain the city auditor and the city treasurer from paying certain increases in the compensation of firemen and policemen. The main question is whether an order for such increases, with appropriations therefor and ordinances to the same effect, all adopted by the city council without the approval of the mayor, are binding on the city. The answer depends on the meaning of § 20 of St. 1913, c. 719, commonly called the municipal indebtedness 'act.

The powers of municipal government in Taunton concerned in this controversy are vested in the mayor and a city council of nine members.

The mayor, in accordance with said § 20, submitted his annual budget for the year ending November 30, 1918, which was adopted by the municipal council and approved by him in April, 1918. The budget, as submitted, adopted and approved, contained a general appropriation of $60,000 for the police department and $62,000 for the fire department. These appropriations, although not spent when the subsequent order and ordinances here in issue were passed, were sufficient only for the payment of wages of the policemen and firemen at the rates previously in force, and were not large enough to meet the increases contemplated. In June, 1918, the municipal council passed an order requesting the mayor to transmit in writing a recommendation for an appropriation for purposes deemed by it necessary, namely, for increases in the wages of the policemen and firemen. The mayor having failed for more than seven days to transmit such recommendation, the council, by vote of at least two thirds of its members, adopted an order appropriating money for that purpose, which was not presented to the mayor for his approval. Then the council passed, notwithstanding a veto by the mayor, three ordinances making a corresponding increase in the pay of the policemen and firemen.

The mayor declining to approve payrolls at the increased compensation, the council thereupon passed two ordinances, despite a veto by the mayor, the effect of which was to require the city auditor to draw warrants for payrolls and bills against the city and the city treasurer to make payment thereof without approval by the mayor.

These orders, appropriations and ordinances were void because contrary to the provisions of the municipal indebtedness act. That act was an innovation in the administration of the financial affairs of cities governed by a mayor and a city council. It is an act of broad application, and all provisions of general and special laws inconsistent therewith, save in respects not here material, are repealed. § 22. The manifest purpose of the framers of the act was to set rigid barriers against expenditures in excess of appropriations, to prevent the borrowing of money for current expenses, to confine the making of long time loans strictly to raising money for permanent improvements, and in general to put cities upon a sound financial basis so far as these ends can be achieved by legislation. The budget system was one of the means adopted. The responsibility for framing and presenting the budget is placed on the mayor. He is required, within a brief time after the annual organization of the city government, "to submit to the city council the annual budget of the current expenses of the city." The budget consists of an itemized and detailed statement of the money required to meet all the current expenses of the city for the year, with clear specifications of the amounts to be expended for each particular purpose. The preparation of a budget of necessity implies a comprehensive survey of all the needs for expenditures for the ordinary municipal operations and an intelligent and discriminating calculation of necessary charges. That is made an executive function. The power of the mayor in this direction, even by way of supplementary budgets, comes to an end when the tax rate has been fixed for the year. The legislative power of the municipal council respecting the budget is not unbounded, but is strictly limited to the reduction or rejection of any item, and it is prohibited from increasing any item in or the total of the budget and from adding any item without the approval of the mayor. The manifest design of these provisions is to provide early in the municipal year a complete schedule

of appropriations for the general uses of the city and to discourage a tendency to spend more than the municipal income. Then follows the only provision permitting the municipal council to take the first step in making appropriations, as follows: "In case of the failure of the mayor to transmit in writing to the city council a recommendation for an appropriation of money for any purpose deemed by the council to be necessary, and after having been so requested by vote of the city council, said council, after the expiration of seven days after such vote, upon its own initiative, may make an appropriation for such purpose by a vote of at least two thirds of its members." These words cannot in reason be construed as permitting the city council at any time of its own volition to supplement and increase the items already included in the annual budget as adopted. Such an interpretation would be incompatible with the preceding provisions whereby the power of the council to deal with the budget is restrained within narrow confines. It would be an idle form to prohibit the council from increasing any single item or otherwise in any way adding to the aggregate of appropriations recommended by the mayor, and at the same time allow the council to raise any one or all of these items and to add new items through the simple device of a request to the mayor to transmit a recommendation to that end, and, in the event of his refusal, to make unlimited appropriations covering the same subject. Such utter absence of effective restraint cannot be presumed to have been the intent of the General Court. A legislative act ought to be interpreted, whenever permitted by its words, so as to make it effective toward a substantial end and not devoid of vitality. Barrenness of accomplishment cannot be imputed to the legislative department of government. The context shows that the words "any purpose," in the sentence last quoted from the act, mean and can only mean an object other than those already included in the annual and supplementary budgets submitted by the mayor.

This unequivocal limitation placed by the statute upon the power of initiative by the council in making appropriations cannot be circumvented by the agency either of a vote requesting action by the mayor, or of an amendment to ordinances establishing such expenditures, or by the enactment of an ordinance attempting to deprive the mayor of one of the essential prerogatives of

the chief executive, under such a city charter as that of Taunton, of approving drafts or warrants before money can be withdrawn from the city treasury. All these contrivances are equally futile to frustrate the clearly dominant purpose of the statute. These votes and ordinances of the municipal council apparently all were parts of a single scheme directed toward the sole end of attempting to increase the pay of the policemen and firemen in a way not authorized by the statute, and therefore they all fall together. The findings of the single justice and his order for permanent injunctions were right.

*Decree accordingly.*