Pettingell, P. J.
This is a consolidated report of two hundred and twenty-four cases, brought by employees, all policemen, employed by the City of Cambridge, who sue the city for salary increases voted by the City Council, which increases the city contends are illegal and void. There were tried with these cases other cases brought by two *258 hundred and ten plaintiffs, all firemen, against the same defendant and involving the same issues. The cases of the firemen are consolidated with the case of Walter L. Allen v. City of Cambridge, Third District Court of Eastern Middlesex, No. 1955 of 1942, Appellate Division No. 3571.
In 1941, there was an unusual condition in the City of Cambridge. The mayor of the city had been convicted of crime and had appealed from that conviction to the Supreme Judicial Court. While the appeal was pending, he voluntarily ceased to hold office. There was doubt whether any other city official had authority under the city charter then in force to act in his place. A few months earlier the city had adopted the Plan E Charter, so-called, and an election was to be held to choose a city government which would take office under the new charter, January 5,1942.
In this unsettled condition of things, the Legislature passed, July 23, 1941, Statute 1941, Chapter 505, entitled “AN ACT RELATIVE TO THE OFFICE OF MAYOR IN THE CITY OF CAMBRIDGE AND THE ADMINISTRATION OF THE AFFAIRS OF SAID CITY.” This act, effective from its passage, provided in section 1, “Notwithstanding any provisions of general law, of any special act relating to the City of Cambridge or of any ordinance of said city, the president of the city council of said city in office on the effective date of this act . . . shall exclusively, during the period beginning with said effective date and ending on the first Monday in January, nineteen hundred and forty-two possess all the rights and powers, perform all the duties and be subject to all the obligations of mayor of said city, subject, however, to all the following provisions: — ”
Then follow, still a part of section 1, eight directives or prohibitions. The first provision, (A), concerns the immediate termination of the authority of the president of the *259 city council to act if the mayor should be acquitted in the criminal proceedings pending against him. The second provision, (B), provides for the termination of all terms of office of persons appointed or reappointed by the president of the city council, or by the mayor in case of his acquittal, all of which are to end on the first Monday of January 1942, the employees, however, to continue to hold office until the qualification of their respective successors.
The third provision, (C), relates to the compensation of the president of the City Council while serving as acting Mayor. The fourth provision, (D), is to the effect that the act shall in no way affect the position, powers and duties of the president of the City Council while serving as Mayor. The fifth provision, (E), indicates the manner in which a temporary president shall be chosen to act under the act in case the president shall be unable to act because of disability or absence from the city. The sixth provision, (F), gives the city auditor certain powers pending the election of a temporary president.
The seventh provision is:
“ (G) During the period covered by this act, no permanent appointment, and no provisional or temporary appointment except to fill a vacancy until the first Monday of January, nineteen hundred and forty-two, shall be made to any office or position within the classified civil service of said city, except with the approval of the director of civil service in the department of civil service and registration.”
The final and vital provision, as far as these cases are concerned, is as follows:
“(H) During the period covered by this act no additional appointment, and no promotion or increase in salary, except regular step-rate increases, shall be made in any appointive office, position or employment in the service of the city.”
*260 The second section of the chapter provides that no special election for a mayor shall be held in 1942 under the pertinent provisions of the General Laws.
The third section forbids, during the period covered by the act, the making of loans by the city under any special act authorizing it to borrow money, or under the general authority granted by Chapter 44 of the General Laws, excepting certain specified emergency loans, authorized under named sections of Chapter 44.
Two questions arise concerning the application of this statute. There is first the issue raised by the plaintiffs who contend that the purpose and intent of the statute is directed to the determination of an acting mayor and applies only to his authority. Consequently, the plaintiffs argue, it does not apply to the salaries of policemen and firemen because the acting mayor has no authority over such salaries.
We cannot accept this narrow point of view. The title of the act is in a legal sense a part of it and is of importance in determining its construction and application. Wheelwright v. Tax Commissioner, 235 Mass. 584, at 586. Brown v. Robinson, 275 Mass. 55, at 57. Commonwealth v. Flynn, 285 Mass. 136, at 139. Leone v. Falco, 292 Mass. 299, at 302, 303. Geen v. Old Colony Trust Co., 294 Mass. 601, at 603. From the title of the act it is apparent that the Legislature intended not only to provide an acting mayor for the city but to control and restrain the administration of the finances of the city during the period between the passage of St. 1941, C. 505 and the inauguration of the new city government. During that period the performance of certain acts is definitely and positively forbidden. In particular appointments to office, promotions, increases in pay and the borrowing of money are either completely prohibited, or are permitted to a limited degree and within stated conditions.
*261 The restrictions contained in St. 1941, C. 505 are reminiscent of those imposed on the city of Fall River by St. 1931, C. 44, concerning which the Supreme Judicial Court said in Paquette v. Fall River, 278 Mass. 172, at 175, 176,
“The enactment of St. 1931, C. 44 was within the general power of the Legislature even if its Section 8 be regarded as an amendment or suspension of G. L. C. 71, section 43. The General Court has extensive authority respecting cities and towns. It may distribute the functions of municipal government among several officers and boards and from time to time may revoke, or alter, or modify the duties thus reposed and grant them to other and newly established instrumentalities as in its judgment the public welfare may require. Embraced within this broad prerogative would be the transfer of the exercise of the discretion of the school committee by G. L. C. 71, section 43, to the board of finance so concerned Fall River, or to require its joint exercise by both boards.”
In deciding that St. 1931, C. 44 was constitutional, the Court said in Broadhurst v. Fall River, 278 Mass. 167, at 168, 169,
“The design of that chapter, as disclosed by all its provisions, is to create a board of finance consisting of three persons to be appointed by the Governor, only one of whom need to be a resident of Fall River, and to vest in that board complete control over all the financial affairs of that city. The general purpose is set forth in section 8 in these words: ‘ The board shall have supervision over the financial affairs- of said city, and no appropriations shall be made, and no debt incurred, except with the approval or upon the recommendation or requisition of the board, which approval, recommendation or requisition shall be in writing. No department of said city, including, police departments, shall expend any money or incur any liability except with the written approval of the board.’ The sweeping nature of that general purpose and the intention that nothing shall stand in its way are emphasized by this sentence in section 16. ‘The operation of such part *262 of any statute as is inconsistent with the provisions of this act, insofar and to the extent that it applied to the city of Fall River, or to any of its interests or affairs, shall be suspended so long as the powers and duties of the board shall continue to be in effect hereunder.’ The inescapable result of these provisions is that said C. 44 must override every inconsistent power conferred by said C. 278 under which the plaintiff claims.”
St. 1941, C. 505, which we are considering, begins with the words “Notwithstanding any provisions of general law, of any special act relating to the city of Cambridge or of any ordinance of said city.” In view of the language of the Supreme Court just quoted, the effect of the opening clause of St. 1941, C. 505 can be given no other effect than that of a suspension of all state and city statutes and ordinances which are in conflict with St. 1941, C. 505. The Legislature by that statute is exercising its right to “revoke, alter or modify the duties” and powers previously reposed in various offices, departments, or other agencies of the city of Cambridge, and has placed upon the city and its agencies certain prohibitions which, although in the act establishing the office of temporary .mayor, are not applicable to him alone, but relate to and control, the entire city, and every officer, department and instrumentality through which the municipality operates, including the City Council. The hands of that body are effectually tied by the statute as to every exercise of power which the statute specifically prohibits. The prohibitions of increases of salary, is a subsection of section 1 which begins with the authorization of an acting mayor; the two things are thus brought within the same intent and purpose.
We are of opinion, therefore, that St. 1941, C. 505, definitely forbade any increase in the total of the city’s *263 financial burden through the increase of salaries made in the ordinance passed, December 9, 1941.
The second question concerning the act is the time of its expiration, which is described in the act as “ending on the first Monday in January, nineteen hundred and forty-two.” The first Monday of January, 1942, was January 5, 1942.
It might be contended effectively that the mere passage of the ordinance on December 9, 1941 was in itself a violation of the statute, regardless of the effective date of the ordinance, because the ordinance was actually “made” during the period when the statute was in operative effect. If the ordinance had any legality, it had it by virtue of action when such action was forbidden. If it had any legality, it was because the action which “made” it, was complete and final at a time when such action was prohibited. The fixing of an effective date, beyond the period of the operation of the statute, does not change this situation.
One of the main contentions of the plaintiffs, however, is that the effective date of the ordinance in question was outside the effective period of St. 1941, C. 505, and that the effective period of that statute did not include January 5, 1942, the day specified in the statute as the day when its effective period ended.
We are of opinion, however, that the effective date fixed in the statute was not beyond the operation of the statute. If the contention of the plaintiffs is correct, the authority of the statute ceased on the day previous, or at least on the first second of that Monday.
In a situation such as exists here the usual rules of counting days, by excluding the.first and counting the last, or excluding the last and including the first, do not apply. The statute went into effect on the day on which the formalities of its passage were complete; Kennedy v. Palmer, 6 Gray 316, at 317; and it continued in effect until the ex *264 piration of the date specified in the statute. “When the first or last day is expressed no rule is needed to ascertain what that day is.” Northwestern Guaranty Loan Co. v. Channel, 55 Northwestern Reporter (Minn. 1893), 121, at 122.
In our view of the statute, the specification of the first Monday of January as the “ending of the duration” brought that entire day within the scope of the statute. Estes v. Tower, 102 Mass. 65, at 66. Stevenson v. Donnelly, 221 Mass. 161, at 164. Krasnow v. Krasnow, 253 Mass. 528, at 529. Bouvier v. Craftsman Ins. Co., 300 Mass. 5, at 8.
We decide, therefore, that the first ordinance upon which the plaintiffs rely, effective January 5,1942, which was “the first Monday in January, nineteen hundred and forty-two”, was in contravention of St. 1941, C. 505, and was null and void.
The plaintiffs further rely upon the passage of an ordinance raising their pay, passed February 16, 1942, being the same in language as the ordinance passed, December 9, 1941. Circumstances apply to the 1942 ordinance, much different from those we have been considering.
On February 16, 1942, the day the ordinance relied on came before the City Council for final action, the city manager, the proper officer to prepare the annual budget, delivered in the forenoon to the city clerk the budget for the year 1942, with an accompanying message of transmission. That message and the budget were read to the City Council at its meeting in the evening under the order of business termed “Communications from the City Manager” which was the first order of business appearing in the procedure earlier adopted by the City Council. After the reading of the budget the City Council referred it to the Committee on Finance, which is the City Council sitting as a Committee of the whole. Later, at the same meeting, the ordinance *265 for the increase of the pay of the plaintiffs, now relied upon. came before the Council and was passed by a two-thirds vote.
Under G. L. (Ter. Ed.) C. 44, section 32, the Mayor of a city has the burden and responsibility of submitting to the City Council, the budget of the current expenses of the city. By G. L. (Ter. Ed.) C. 43, section 104, in cities which have adopted the Plan E charter, the responsibility of filing the budget is upon the City Manager. Under section 33 of Chapter 44, upon the failure of the proper official to include in the budget “a written recommendation for an appropriation for any purpose deemed necessary by the council”, the council may, by the prescribed procedure, upon its own initiative, make an appropriation for such purpose by a two-thirds vote. This is the only provision which enables the city council to initiate an appropriation and the only provision, relating to the budget, where a two-thirds vote is mentioned. At the oral argument counsel for the plaintiffs admitted that section 33 was not applicable to the facts existing in this case because the budget, as submitted, contained a provision for the payment of the plaintiffs. Under section 32, the amounts contained in the budget cannot be increased without the approval of the officer submitting the budget. There having been no such approval, and there having been a provision for the payment of the plaintiffs in the original budget, the fact that the city council passed the ordinance by a two-thirds vote is immaterial.
An issue is clearly presented. The city manager submitted a budget containing provision for the payment of salaries, including those of the plaintiffs, on the rates in effect in 1941. The budget submitted by the City Manager, having been read to the Council, was referred to the Committee on Finance. The ordinance upon which the plaintiffs rely for their claims to increases of pay was then *266 brought up and passed. The defendant contends that according to G. L. (Ter. Ed.) C. 44, section 33A, the City Council was without authority to pass such an ordinance, the budget having been submitted to the Council before its enactment of the ordinance. Flood v. Hodges, 231 Mass. 252, at 255-258. McHenry v. Lawrence, 295 Mass. 119, at 122, 123.
The plaintiffs make several contentions regarding the submission of the budget, but do not seriously contend that it was not before the City Council and acted upon by that body before the ordinance was passed. On the other hand the defendant contends that it was submitted when it was delivered to the City Clerk on the forenoon of February 16, 1942. Regardless of whether it was submitted at that time, or was submitted when read to the City Council, we are of opinion that beyond all doubt it was submitted when the City Council received it and referred it to the Committee on Finance.
The plaintiffs seriously contend, however, that as both items were acted upon at the -same meeting it was within the power of the City Council to suspend its rules either by direct action or by implication through the passage of legislation in a manner which shows unanimous consent to waive compliance with the rule”. This argument of the plaintiffs, based upon the decision of the court in Coleman v. Louison, 296 Mass. 210, stretches the doctrine in question beyond reason in attempting to apply it to the case at bar. In that case the action taken was unanimous; the court held that the unanimous action amounted to unanimous consent to waive the rule. The action in the case before us was not unanimous but was 6 to 3. Nowhere in the report does it appear what vote was required to suspend the operation of the rules, but the case cited does not say, nor does it appear in any other decided case which has been called to *267 our attention, that a vote of a municipal body, illegal by statute, is made legal because the municipal body could have changed its order of business, although it did not. We have no way of knowing whether the Council by a 6 to 3 vote legally could have voted to suspend its rules and act upon the ordinance before receiving the budget. If that is a material fact, the burden was upon the plaintiffs to establish error by a sufficient record, Posell v. Herscovitz, 237 Mass. 513, at 516, 517.
If it appeared that at the commencement of the meeting, the Council had unanimously passed the ordinance in question, instead of waiting for the first item of business called for by the rules which it had adopted, which was “communications from the City Manager”, there might be a valid argument that it had thereby impliedly waived the rule of order which was applicable. But to receive the budget, thereby creating a situation in which certain legislation was forbidden by statute, and having next, by a divided vote, violated that statute, the doctrine of Coleman v. Louison, does not save the day by creating an inference that the City Council thereby had impliedly suspended its rules before it received the budget. It is to be remembered also, that what is involved here is not another ordinance or act of the City Council but a statute of the legislature.
The contention of the plaintiffs, extended to its logical conclusion is that at the meeting at which the budget is submitted, the City Council has unlimited authority to create new positions or to increase salaries, after the submission of the budget, on the theory that the creation of such new positions and the increases of salary, can by inference or implication be treated as made under a suspension of the rules which places their enactment prior to the subsequent submission of the budget.
*268 The plaintiffs contend further that the City Council alone had authority to fix salaries for city employees, by virtue of St. 1935, C. 214, and that “If there be any conflict between (G. L. (Ter. Ed.) C. 44,) section 33A and Acts of 1935, chapter 214, it is section 33A which must give way”. We think that the plaintiffs are right in stating that there is no such conflict. St. 1935, C. 214, gives the Cambridge City Council the right “to fix the salaries of the police and fire departments of the city”. The city council had exercised that right before 1942 and the budget submitted by the city manager was made upon the basis of the fixing which had been done earlier by the City Council. Under G. L. (Ter. Ed.) C. 44, section 33A, no infringement is made of the right of the City Council to fix salaries. That section, as pertinent here, provides that such fixing of salaries must appear in the applicable budget, either the annual one submitted, or in the case of an increase after the submission of that, in a supplemental budget. If the plaintiffs are right in their contention, the City Council can at any time, after the budget has been passed, increase salaries in the departments in question, and, whether or not there has been any money appropriated, the office holders can recover the increases. No decided case goes that far. In Forbes v. Woburn, 306 Mass. 65, the plaintiff had held office at the salary sued for since 1931 and had been paid at that rate until June 1938. That case is held to be within the authority of Barnard v. Lynn, 295 Mass. 144 and Fortin v. Chelsea, 301 Mass. 447, 448. A similar result was reached in Callahan v. Woburn, 306 Mass. 265, at 267. In Fortin v. Chelsea, 301 Mass. 447, the defendant city attempted to reduce an established salary by methods which the court held were improper. Goss v. District Court of Holyoke, 302 Mass. 148 is the same kind of a case.
*269 In all of the cases cited, including Barnard v. Lynn, 295 Mass. 144, salaries had been “fixed” by the proper authorities, and had been recognized and paid for periods of considerable time, after which the city authorities attempted for one reason and another to reduce them. The decision of the Supreme Judicial Court in all of these cases was to the effect that nothing that had been done by the defendant cities was sufficient to take away the rights which the plaintiffs had acquired.
Another kind of a case, but one which illustrates vividly the theory upon which the cases already considered were decided, is Rappaport v. Lawrence, 308 Mass. 545, in which the plaintiff, a civil service employee, sued to recover a salary which he had enjoyed for several years, which was cut off because of the exhaustion of the available funds. It appeared that there had been originally a sufficient appropriation for the plaintiff’s department but the money “was unlawfully used in part for other purposes”. The plaintiff was allowed to recover.
The underlying principle of such cases is clearly apparent. A city cannot employ a person in a classified civil service capacity at an established salary and then, without sufficient reason refuse to pay him that salary. Failure to appropriate money for payment is not a sufficient reason. We would have before us a parallel case if the City Council here had refused to appropriate money to pay in 1942 the salaries already fixed prior to 1941 and paid in 1941.
The law applicable to the cases before us is to be found in McCarthy v. Malden, 303 Mass. 563. The plaintiff was a clerk employed by the park commissioners who had authority by statute to appoint employees and “fix their compensation”. The plaintiff’s salary had been fixed by the park commissioners at $500 a year and the plaintiff had been paid at that rate until 1931. In the budget for 1931, the *270 mayor for the first time, specifically segregated various items, including that for the plaintiff’s salary, for which the budget included $300; the budget for 1932, included $200. The court held that the plaintiff could recover nothing more.
A vital issue in the case was whether the statutory authority of the board of park commissioners was controlled by G. L. (Ter. Ed.) C. 44, section 31. The issue before us is whether the statutory power of the Cambridge City Council “to fix” salaries of the police and fire departments of the city is controlled by G. L. (Ter. Ed.) C. 44, section 33A. What the Supreme Judicial Court said in McCarthy v. Malden, is in our minds conclusive of this case. The plaintiffs have argued that there is no conflict between the two provisions, but if there is, it is section 33A which must give way. We think that there is a conflict but that St. 1935, C. 214 must give way.
The court said, at pages 565, 566:
“G. L. (Ter. Ed.) C. 45, section 5, provides that boards of park commissioners ‘may . . . appoint all necessary engineers, surveyors, clerks and other officers . . . define their powers and duties and fix their compensation . . ..’St. 1882, C. 154, section 3, contained the same provisions. G. L. (Ter. Ed.) C. 44, section 31, provides: ‘No department of any city or town, except Boston, shall incur liability in excess of the appropriation made for the use of such department . . . ’ with an exception not hére material. One purpose of this statute was to set rigid barriers against expenditures in excess of appropriations. Flood vs. Hodges, 231 Mass. 252, 256. Parkhurst v. Revere, 263 Mass. 364, 370. Burt v. Municipal Council of Taunton, 275 Mass. 535, 540. It takes precedence over the general provisions of law such as are found in G. L. (Ter. Ed.) C. 45, section 5 which is in one respect nothing more than the simple permission to one board of public officers to fix salaries. See Decatur v. Auditor of Peabody, 251 Mass. 82, 89, decided in January 1925, where it was said in effect, that general provisions such as, for example, are found in G. L. c. 111, section 27, are *271 subject to appropriations made under the provisions of the budget law (G. L. (Ter. Ed.) c. 44, section 31) G. L. c. 111, section 27 (see now G. L. (Ter. Ed.) c. 111, section 27) empowered boards of health to fix salaries of the city or town physician, its clerk, and other agents and assistants, and is similar, in respect to the powers so conferred, to G. L. (Ter. Ed.) c. 44, section 5. The effect of said section 31 of c. 44 is not to destroy the authority of such boards to contract on behalf of the municipality but rather to place a limitation on that authority with the result that a contract made by such officers in violation of its provisions is not binding upon the city.”
Section 31 is a material part of the so-called “municipal indebtedness law”, but section 33A is just as material and just as important; what the court said in McCarthy v. Malden, just quoted, applies as well to section 33A as to section 31. So too, does the oft quoted matter from Flood v. Hodges, 231 Mass. 252, at 256:
“The manifest purposes of the framers of the act was to set rigid barriers against expenditures in excess of the appropriations, to prevent the borrowing of money for current expenses, to confine the making of long time loans strictly to raising money for permanent improvements, and in general to put cities upon a sound financial basis so far as these ends can be achieved by legislation. The budget system was one of the means adopted.”
“The prohibitions of such an act must not be weakened, nor the exceptions enlarged, by constructions which might tend to break down the safeguards designed to be set up or to admit of the evils intended to be prevented.”
Continental Construction Co. v. Lawrence, 297 Mass. 513, at 515.
“And by the municipal indebtedness act, St. 1913, c. 719, which with amendments is now found in G. L. (Ter. Ed.) c. 44, such a limitation upon the authority of officers and departments of a city or town was made part of our general law.”
McHenry v. Lawrence, 295 Mass. 119, at 121.
*272 If the plaintiffs are correct in their contention, the City Council has authority after the budget has been submitted, at that meeting to disregard that part of section 33A which requires a supplemental budget in case of an increase in salaries not provided for by the budget, and thereby, without more, to create increases of pay which are contracts binding upon the city.
Our conclusion on this particular issue is that St. 1935, c. 214 is controlled by G. L. (Ter. Ed.) c. 44, section 33A, and that the power given by the former statute to fix salaries must be exercised under the limitations provided by section 33A.
We are also of opinion that recovery must be denied the plaintiffs under the 1942 ordinance because of the provisions of G. L. (Ter. Ed.) c. 44, section 31 forbidding incurring liability in excess of appropriations. Continental Construction Co. v. Lawrence, 297 Mass. 513, at 514, 515. There is nothing before us to show that there was any appropriation out of which these increases could be paid. McCarthy v. Malden, 303 Mass. 563, at 566.
In a similar ease, McHenry v. Lawrence, 295 Mass. 119, the city authorities before the budget was submitted, made several appointments of policemen and firemen. Under the charter provisions the various departments of the cities had authority to expend each month an amount not exceeding in any one month the sums spent for similar purposes during any one month of the preceding year. The Supreme Judicial Court said, at pages 122 and 123, in spealdng of section 33A:
“The words ‘subsequent to the submission of the annual budget’ do not imply that before such submission there is no restraint upon the creation of new positions or the increase of salaries. Such a construction would tend to destroy the statutory system. . . . Such an in *273 crease comes rather within the provisions of section 31 that ‘No department of any city or town, except Boston shall incur liability in excess of any appropriation made for the use of such department’ with an exception immaterial to this case. A contract made in violation of this section is not binding upon the municipality.
“In determining whether a liability incurred is in excess of the departmental appropriation, the amounts needed for the satisfaction of all pre-existing contracts, including the salaries of the whole fiscal year of persons already in office at the time of the incurring of the liability in question, must be deducted from the appropriation. . . .
“The insufficiency of the appropriations invalidated the appointments of the plaintiffs and left them without right to salary. . . . The plaintiffs are claiming salaries as regular members under permanent appointments, which, at least is salaried appointments, were invalid from the moment they were made.”
In the cases we are deciding the record contains no exact information regarding the financial situation of the police and fire departments. It was stated at the oral argument that the budget submitted by the city manager contained provisions for the payment of the policemen and firemen at the 1941 rates. If that is a fact, there was no provision of funds from which the increases created by the ordinance for four hundred and thirty-four policemen and firemen could be paid.
In that aspect, the cases before us are similar to McHenry v. Lawrence, supra, and are decided by that case.
We fail to see any pertinency in the argument that the city manager is the “hired man” of the City Council. He holds an office, created by statute, which requires him to act in the best interests of the city. The other officials of the city, who are similarly elected, have the same duty. The *274 fact that he is elected by the City Council in no way changes the relation between him and the city, created by statute, and in no way makes him subservient to that body. He and the plaintiffs, regardless of any action taken by the City Council, are primarily servants of the public, agents of the city. They are not “hired men” of the City Council.
We have examined carefully the several requests for rulings filed by the plaintiffs and denied. What has been said heretofore discloses that there was no error in the denials.
No prejudicial error appearing, the report is to be dismissed.