Mason, J.
The facts and issues in these cases are fairly shown in the decision of the Trial Court, which is as follows:
“These are three actions brought by a member of the permanent force of the Pittsfield Police Department, a member of the permanent force of the Fire Department and a laborer in the Department of Public Works of the defendant City of Pittsfield. By virtue of their several employments, they were in the classified civil service during the period of time involved in these actions. The cases come before the court upon a clear and concise agreed statement of facts.
*366 The question of law involved is whether an ordinance numbered 227 is valid. This ordinance was passed to he enrolled by the duly constituted City Council of the City of Pittsfield on October 6, 1942, and on the 9th day of October 1942 the same was passed to be ordained. Thereafter said ordinance authenticated by the signatures of the President of the City Council and the City Clerk was presented to the Mayor for approval as required by law. Within ten days, namely on October 17,1942, the Mayor returned it to the City Council without bis signature and with his written objections and disapproval. More than seven days after such return, the ordinance was again considered by the City Council and on October 27, 1942, on roll call the Council passed the same by vote of all of the members present, ten in number. By its terms it was to take effect January 1st, 1943. The terms of the Mayor and the members of the City Council extended to the first Monday of January 1944.
The defendant offered no defense because of the method used to raise wages or salaries, namely by ordinance.
The defendant stated through counsel it did not care at that time to argue as to whether any of the three plaintiffs were “officials” rather than “employees” but did cite various decisions and referred to Chapter 62 of the Acts of 1943. The budget submitted by the Mayor to cover the proposed expenditures of the defendant for the year 1943 including the amounts to be expended for salaries and wages did not provide sufficient funds to pay the compensations fixed by said Ordinance No. 227, that is to say the increases therein provided for. This budget was approved by the City Council. No action was taken by that body requesting the Mayor to transmit a recommendation under section 33 of said chapter 44 nor has the Mayor made provision for any increases of salaries or wages from the *367 amounts included in the annual budget by a supplementary budget.
The parties agreed that if Ordinance No. 227 became effective and was in full force on January 1, 1943, and was continued to March 28, 1943 inclusive, the plaintiffs are entitled to recover.
With these statements as bases, consideration is now given to the specific defenses- set up- by the City. These were:
(1) Under the pertinent provisions of the General Laws, a City Council may not over the veto of the Mayor establish by ordinance wage or salary rates higher than those previously established.
(2) If the action of the City Council was of no effect, the plaintiffs cannot recover under section 33A of said Chapter 44 which reads in part as follows:
“The Budget shall include sums sufficient to pay salaries of officials fixed by law or by ordinance.”
(3) If in 1943 either before or after the submission of the annual budget, the City Council should have purported to pass over the Mayor’s veto an ordinance increasing salaries or wages and the Mayor did not provide for such increases either in the annual or supplementary budgets, the action of the City Council would be void.
Chapter 44 of the General Laws hereinbefore referred to is commonly known as the Municipal Finance Statute. It was wisely conceived and drafted. Its evident purposes should not be ignored.
It has been well said that “The manifest purpose of the framers of the Act was to set rigid barriers against expenditures in excess of appropriations . . . and in general to put cities upon a sound financial basis so far as these *368 ends can be achieved by legislation. The budget system was one of the means adopted. The responsibility for framing and presenting the budget is placed on the Mayor . . . The preparation of a budget of necessity implies a comprehensive survey of all tire needs for expenditures .... That is made an executive function. The power of the Mayor in this direction even by way of supplemental budget comes to an end when the tax rate has been set for the year. The legislative power of the municipal council respecting the budget is not unbounded but is strictly limited to the reduction or rejection of any item and it is prohibited from increasing any item in or the total of the budget and from adding any item without the approval of the Mayor.”
In furtherance of its purpose to strictly control municipal expenditures, the legislature has provided that such prior to regular appropriations must “not exceed in any month the sums spent for similar purposes during any one month of the preceding year.” These are salutary controls and the evident intent of the legislature should receive the support of the courts. However I cannot believe that it was the intention of the legislature to give absolute control to the Mayor. To hold that the City Council could not increase salaries or wages without the approval of the Mayor in the form of budget appropriation so long as the Mayor remained in office or was succeeded by another of like mind, would create an impasse and might result in serious loss. Rather it seems to me that the City Council can effectively raise salaries and wages by the enactment of an ordinance over the. veto of the Mayor and effective at the beginning of a new fiscal year. In the instant case the reasonable safeguards provided in the statutes were recognized. The Mayor expressed his adverse judgment by his veto. There was no unsettlement of the municipal finances *369 during the year 1942. The Mayor was aware of the ordinance and of the additional financial requirements for the year 1943. In view of the failure of the Mayor to comply with the requirements of the ordinance, these actions are well-grounded and the judgments must be for the plaintiffs. The fact that no appropriations have been made is not a bar to the actions if the compensations were legally due. The Court is not unaware of the decision in McHenry v. Lawrence, 295 Mass. 119 which seems at variance with the conclusions here reached but the decision in this case does not seem to be conclusive in the present actions.”
The final paragraph of the agreed statement of facts is as follows:
“It is further agreed that provided the purported Ordinance #227 became effective and was in full force on January 1,1943, and was in full force and effect from January 1,1943 to March 28,1943, inclusive that the respective three plaintiffs are entitled to recover the amounts set forth in their respective declarations.”
The defendant made several requests for rulings in each case, but they require no separate discussion as the only issue before us is whether the ordinance in question was valid and in force on the first day of January, 1943. If it was valid and in force on that date, the plaintiffs are entitled to recover under the terms of the agreed statement of facts. The fact that the budget submitted by the Mayor did not provide for these increases is no bar. See Barnard v. Lynn, 295 Mass. 144; Rappaport v. Lawrence, 308 Mass. 545, p. 550.
The defendant’s brief contains this further admission:
“The defendant also concedes that the forms for enactment of ordinances prescribed by the pertinent provisions of Pittsfield’s charter, (Acts of 1932, Ch. 280, Section 23) were complied with, so far as No. 227 is concerned.”
*370 Thus we come to the narrow question whether the City Council of Pittsfield had the power to pass this ordinance increasing the pay of city officials and employees over the veto of the Mayor. It is clear that they had such power unless it has been taken away from them by statute. It is the contention of the defendant that this is the effect of our present statutes establishing the budget system for municipal appropriations.
This system was established in 1913 by the municipal indebtedness act. Acts of 1913, chapter 719, section 20, provided that the Mayor should submit an annual budget to the City Council. It further provided “The City Council may reduce or reject any item, but without the approval of the Mayor, shall not increase any item in, nor the total of a budget, nor add any item thereto.” There have been several amendments of this act, and the phraseology has been changed. It is now embodied in G. L. Chapter 44, section 32, as most recently amended by Acts of 1941, Chapter 473, section 2, which contains the following provision—
‘ ‘ The City Council may by majority vote make appropriations for the purposes recommended and may reduce or reject any amount recommended in the annual budget, but, except on recommendation of the mayor, shall not increase any amount in or the total of the annual budget, nor add thereto any amount for a purpose not included therein, except as provided in section thirty-three.”
The municipal indebtedness act (sometimes called the municipal finance act) has been before the Supreme Judicial Court many times, and has been construed and enforced strictly. The leading case, much relied on by the defendant is Flood v. Hodges, 231 Mass. 252. This case contains a full discussion of the scope and purpose of the act. In that case the Mayor submitted a budget which was duly approved. Later the municipal council asked the Mayor to recommend *371 an additional appropriation. This being refused the municipal council then made an appropriation, passing it over the Mayor’s veto. The Council also passed certain ordinances designed to accomplish the same purpose against the objection of the Mayor. The Court said “all these contrivances are equally futile to frustrate the clearly dominant purpose of the statute. These votes and ordinances of the municipal council apparently all were parts of a single scheme directed toward the sole end of attempting to increase the pay of policemen and firemen in a way not authorized by the statute, and therefore they all fall together.” This decision relates to matters arising after the financial plans for the year had been made, and is clearly distinguishable from the cases before us where the ordinance in question was passed before the beginning of the year, and would thus have no tendency to upset an established policy.
The defendant also relies upon the case of McHenry v. Lawrence, 295 Mass. 119. In that case the plaintiffs were promoted by the director of public safety, January 13, 1935, to positions carrying larger salaries. No appropriations were made to cover these increased salaries. It was held that those plaintiffs were not entitled to recover for these salaries although the promotions were made before the budget was submitted by the Mayor.
The cases before us are distinguishable. The ordinance in question was passed in October, 1942, more than two months before the beginning of the year 1943. When the year 1943 began the amounts necessary to pay these increased salaries were known to the Mayor, and should have been included in the budget.
The fact that under the charter of Pittsfield the terms of office of the Mayor and City Council did not expire until January 1, 1944, is immaterial. The fiscal year 1943 is the same whether the Mayor and City Council are the *372 same as in the preceding year by virtue of re-election or by the length of their official term.
We find no prejudicial error in the rulings of the Trial Court, and the report must be dismissed.