JOHN F. HAFFNER & others *vs.* DIRECTOR OF PUBLIC SAFETY
OF LAWRENCE & others.

Essex.    November 3, 1952. — January 30, 1953.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Municipal Corporations*, Purchasing, Parking meters, Contracts, Officers
and agents, Charter.    *Contract*, Validity, With municipality.    *Lawrence.*
*Statute*, Repeal.    *Words*, "Supplies."

Action by the city council of Lawrence authorizing one of the aldermen
to contract for the acquisition of parking meters and the making of
such a contract by him were in violation of § 51 of Part II of the city
charter, St. 1911, c. 621, providing for the purchase of "all supplies"
by the city's purchasing agent except in case of emergency.    [712]
Parking meters are "supplies" within provisions of law requiring the
purchase of "all supplies" for municipalities by their purchasing
agents.    [712]
The provisions of § 51 of Part II of the charter of the city of Lawrence,
St. 1911, c. 621, requiring the purchase of "all supplies" by the city's
purchasing agent except in case of emergency have not been superseded
with respect to parking meters by G. L. (Ter. Ed.) c. 40, § 22A, in-
serted by St. 1947, c. 442, § 1, as amended, empowering the city
council to authorize "a board or officer" to contract for their acquisi-
tion: the "board or officer" referred to is the one having legal au-
thority to purchase supplies.    [713–714]

PETITION, filed in the Superior Court on May 17, 1951.
The suit was heard by *Smith*, J.

*Raymond M. Sullivan*, (*Saul A. Silverman* with him,) for
the petitioners.

*James P. Kane*, City Solicitor, for the respondent city of
Lawrence and others.

*Jacob J. Spiegel*, (*Maurice Ravich & Henry P. Claus* with
him,) for the respondent William J. Casey and another.

WILLIAMS, J.    This is a suit in equity on the petition of
more than ten taxable inhabitants of the city of Lawrence
(G. L. [Ter. Ed.] c. 40, § 53) against the city of Lawrence,
William J. Casey, director of public safety of the city, John S.
Cahill, the city auditor, and Alfred Courtemanche, the city

treasurer. M. H. Rhodes, Inc., has been allowed to intervene as a respondent. The purpose of the suit is to enjoin the respondent Casey from purchasing or entering into an agreement for the purchase of parking meters for the city until the meters have first been designated for purchase by the purchasing agent of the city after competitive bidding and advertising of the intent to award a contract of purchase in accordance with the provisions of the city charter; to restrain the respondent Cahill from approving payment for such meters; and to restrain the respondent Courtemanche from making payment therefor. A judge of the Superior Court made findings of fact and entered an order for a final decree dismissing the petition. He then reported the case to this court on the correctness of his order and stayed further proceedings. The petitioners claimed an appeal from the orders of the judge "dismissing" the petition and "reporting" the case. The respondents city of Lawrence, Cahill and Courtemanche appealed from "the final decree."

It appears from admissions in the pleadings, the evidence which is reported, and the findings of fact that on March 28, 1951, Casey, as director of public safety, made requisition on the city's purchasing agent to call for bids for the purchase of one thousand additional parking meters. After submission of the proposed purchase to competitive bidding the purchasing agent by letter to the city council signified his intention to purchase one thousand automatic parking meters called Park-O-Meter, at a cost of $59.65 per meter, which was the lowest price submitted for an automatic meter, stating in detail his reasons for the purchase of that particular kind of meter. Thereafter on May 14, 1951, the city council by a majority vote authorized "Alderman William J. Casey, an officer of the city of Lawrence to enter into an agreement for the acquisition, installation and maintenance of parking meters in accordance with" G. L. (Ter. Ed.) c. 40, § 22A. In pursuance of this vote Alderman Casey on May 15, 1951, executed a contract in behalf of the city with M. H. Rhodes, Inc., for the purchase of one

thousand Mark-Time manually operated meters, payment for the same to be made over a period of five years from moneys received from the operation of the meters. No appropriation had been made by the council for the purchase.

The charter of the city of Lawrence was granted by special act of the Legislature, St. 1911, c. 621, Part II, later amended by St. 1914, c. 363. See G. L. (Ter. Ed.) c. 43, §§ 64-78. *Fluet* v. *Eberhardt*, 294 Mass. 408. It provides that the government of the city and the general management and control of its affairs shall be vested in a city council of five members consisting of the mayor and four aldermen. Each alderman shall be the director of a department of the city and "shall have full power to carry out the policy or have the work performed in his department, as directed by the city council" (§ 26). Section 29 of the charter reads: "Neither the city council nor the school committee shall make or pass any order, resolution or vote appropriating money in excess of five hundred dollars, or making or authorizing the making of any contract involving a liability on the part of the city in excess of five hundred dollars, unless the same is proposed in writing and notice is given by the city clerk in at least one daily newspaper of the city, not less than one week before its passage, except an order, resolution or vote for the immediate preservation of the public peace, health or safety, which contains a statement of its urgency and is passed by a four fifths vote, and such notice shall be given as aforesaid upon the request of the city council or of the school committee." Section 32 reads: "Upon vote of the city council the mayor shall sign, seal, execute and deliver in behalf of the city deeds and leases of lands sold or leased by the city, and other deeds, agreements, contracts, leases, indentures, assurances and instruments in behalf of the city, except as is otherwise provided herein." Section 51 reads in part: "The purchasing department shall consist of a purchasing agent and such assistants as the city council may from time to time deem necessary. The purchasing agent shall purchase all supplies for the city, except in case of an emergency; but all purchases or contracts for

purchase exceeding twenty-five dollars in amount shall be based upon competition, and no purchases or contracts for purchase shall be made involving the expenditure of more than twenty-five dollars for any one class of supplies in any month, except by competition."

By G. L. (Ter. Ed.) c. 40, § 22A, inserted by St. 1947, c. 442, § 1, as amended by St. 1949, c. 644, § 2, it is provided that any city or town "may appropriate money for the acquisition, installation, maintenance and operation of parking meters, or by vote of the city council or of the town may authorize a board or officer to enter into agreement for such acquisition, installation or maintenance of parking meters; provided, that the city of Boston, for the purpose of enforcing the rules and regulations adopted by the Boston Traffic Commission under chapter two hundred and sixty-three of the acts of nineteen hundred and twenty-nine, may appropriate money for the acquisition, installation, maintenance and operation of parking meters, or, by vote of the city council of said city, subject to the provisions of its charter, may authorize the Boston Traffic Commission to enter into agreements for the acquisition, installation or maintenance of parking meters. An agreement for the acquisition or installation of parking meters may provide that payments thereunder shall be made over a period not exceeding five years without appropriation, from fees received for the use of such parking meters notwithstanding the provisions of section fifty-three of chapter forty-four."

The city council in giving the authority to the alderman to enter into a contract for the purchase of the meters and the alderman in exercising the authority so given by contracting with M. H. Rhodes, Inc., acted in violation of the provisions of the charter relating to the purchase of supplies. Parking meters undoubtedly are "supplies." *Fluet* v. *Eberhardt*, 294 Mass. 408, 410–411. *Bartlett* v. *Lowell*, 201 Mass. 151. The cost of each meter was more than $25 and whether considered singly or collectively they could lawfully have been purchased only by the purchasing agent.

The respondents, however, contend that as to the acquisi-

tion, installation, and maintenance of parking meters § 22A by implication superseded the provisions of the city charter and permits the city council to authorize a board or officer other than the purchasing agent of the city to enter into an agreement for the purchase of such meters. The purpose of that statute was to confer on municipalities additional corporate power to appropriate money for the acquisition of parking meters, or, in the alternative, to contract for their acquisition without prior appropriation where payment therefor was intended to be made from the subsequent receipts of the meters. The statute was general in its application to all cities and towns of the Commonwealth. Since the enactment of the Lawrence charter which provided for a purchasing department in that city, the Legislature, by St. 1916, c. 233, § 1, now embodied in G. L. (Ter. Ed.) c. 41, § 103, has authorized any city which accepts the provisions of the statute to establish a purchasing department with a purchasing agent who shall purchase "all supplies" for the city. This statute is similar in its provisions to § 51 of the Lawrence charter and is designed to promote the establishment by municipalities of centralized systems for the efficient and economical purchase of supplies. See *School Committee of Gloucester* v. *Gloucester*, 324 Mass. 209, 218. As has been said in reference to G. L. (Ter. Ed.) c. 44, which relates to municipal indebtedness, the statute should be construed so as to effectuate its "salutary and important purpose." *Decatur* v. *Auditor of Peabody*, 251 Mass. 82, 86. *Flood* v. *Hodges*, 231 Mass. 252. If the contention of the respondents is sound, § 22A would supersede not only § 51 of the Lawrence charter but also, where it has been accepted, G. L. (Ter. Ed.) c. 41, § 103, so far as the purchase of parking meters is concerned. There is nothing in the subject matter of § 22A which suggests a legislative intent that the purchase of parking meters should be excepted from the general regulations pertaining to the purchase of municipal supplies.

Repeals of statutes by implication "have never been favored by our law. Unless the prior statute is so repug-

nant to and inconsistent with the later enactment that both cannot stand, then the former is not deemed to have been repealed." *Commonwealth* v. *Bloomberg,* 302 Mass. 349, 352. See *Commonwealth* v. *Flannelly,* 15 Gray, 195; *Copeland* v. *Mayor & Aldermen of Springfield,* 166 Mass. 498, 504; *Boston & Albany Railroad* v. *Public Service Commissioners,* 232 Mass. 358, 359; *Eaton, Crane & Pike Co.* v. *Commonwealth,* 237 Mass. 523, 530; *Inspector of Buildings of Falmouth* v. *General Outdoor Advertising Co. Inc.* 264 Mass. 85, 89; *Cohen* v. *Price,* 273 Mass. 303, 309; *Burick* v. *Boston Elevated Railway,* 293 Mass. 431. It was said in *Brown* v. *Lowell,* 8 Met. 172, 174, that strong terms are required to show a legislative intent to supersede by a general act a special act which "may be made in regard to a place, growing out of its peculiar wants, condition, and circumstances." City charters are essentially special enactments designed to provide for the particular needs of the various cities. See *McKenna* v. *White,* 287 Mass. 495, 499.

We think that the Legislature intended that the boards or officers who, under the statute, might be authorized by the city council to enter into agreements for the purchase of parking meters should be the boards and officers who had legal authority to purchase supplies. See *Cullen* v. *Mayor of Newton,* 308 Mass. 578, 583. Such construction gives reasonable effect both to § 22A and to these provisions. *Brooks* v. *Fitchburg & Leominster Street Railway,* 200 Mass. 8, 17. See *Flood* v. *Hodges,* 231 Mass. 252. It is to be noted that as to Boston where the city council was empowered to grant authority to a board which had no prior charter authority to make purchases (see St. 1929, c. 263, and amendments) the Boston Traffic Commission was expressly designated as the purchasing agency. We think that because the authority that may be given the traffic commission is to be voted by the Boston city council "subject to the provisions of . . . [the city] charter" it is not thereby implied that the action of city councils outside of Boston shall be free from charter restrictions. Legislative enactments relating to the government of Boston frequently if

not commonly differ from statutory provisions concerning the treatment of similar problems in other cities.

As the contract to purchase was illegal for the reason which we have indicated, it is unnecessary to discuss whether it was also illegal because it was not signed by the mayor and because the intent to execute it was not advertised. No final decree having been entered, the appeals of the respondents city of Lawrence, Cahill, and Courtemanche which purport to have been taken from such decree are dismissed. The order to enter a decree dismissing the bill is reversed. A final decree is to be entered declaring the contract with M. H. Rhodes, Inc., to be illegal and ordering that the city of Lawrence be permanently restrained from carrying out its provisions.

*So ordered.*